1  William C. Rawson Jr. State Bar No. 64505
   Law Offices of William C. Rawson Jr
2  2524 Seaview Avenue
   Corona Del Mar, California 92625
3  Tel. (310) 291-~~6695~~- 6659
   Fax (949) 812-7641
4  Email



5  Attorney for Debtor, TRAGO INTERNATIONAL, INC., a Delaware corporation ,

# UNITED STATES BANKRUPTCY COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10  In the Matter of:                    Case No. **8:09 BK 24166 TA**

11  TRAGO INTERNATIONAL, INC.,           **HEARING DATE: January 19, 2010.**
                                          TIME: *8:30 a.m.*   *1-20-10*
12       **Debtor**                       PLACE: *Rm 5B*   *11:00 A.M.*

13                                                        *Ku*

14

15

16  ### <u>DEBTORS' MOTION TO EXPAND THE AUTOMATIC STAY</u>

17

18       COMES NOW, Debtor, TRAGO INTERNATIONAL, INC.(the "Debtor" or "Trago")

19  hereby moves this Court to extend or expand the automatic stay provision to certain non-

20  Debtors.   This Motion is made and based upon the papers and pleadings on file herein, the

21  Points and Authorities attached hereto, and any oral argument of counsel adduced at time of

22  hearing.

23  ### <u>POINTS AND AUTHORITIES</u>

24  1. STATEMENT OF FACTS

25     The Debtor, TRAGO INTERNATIONAL, INC. is engaged in the sale of premium tequila

26  and has been incorporated since October 28, 2004. (See Delaware Certificate of Good Standing

27  attached hereto as **Exhibit 1.**) The Debtor, Trago, International, Inc. is a Delaware Corporation

28  that is licensed by the State of Nevada and has been registered to do business there since

DEBTOR'S MOTION TO EXPAND THE AUTOMATIC STAY

1 December 10, 2007. The Debtor's corporate headquarters are located at 770 Northwood

2 Boulevard, Suite 8, Incline Village Nevada.

3     On September 28, 2009, the Debtor filed pursuant to Chapter 11 in the United States

4 Bankruptcy Court for the District of Nevada Case No: 09-298289. On December 16, 2009 the

5 Court dismissed the case without prejudice, citing improper venue as one of the grounds. A

6 true and correct copy of the Order of the Court is attached hereto as **Exhibit 2.**

7     The Debtor, Trago International, Inc. is the successor company to Trago LP a British Virgin

8 Islands Limited Partnership formed by Christopher Condon and Douglas Lovison in or about

9 2002. (hereinafter "Trago LP"). The Limited Partnership owned certain assets, including a

10 patent on a tequila liquor bottle design and a trademark for the name "Trago." See Declaration

11 of Christopher Condon as CEO of Trago International, Inc. attached hereto as **Exhibit 3**

12     The relationship between Lovison and Condon took a disturbing turn on March 24, 2004

13 when Movants, Lovison and Kosty along with a third man, Tyrone Montgomery, walked into

14 Christopher Condon's apartment and ordered Condon to "sit down and review these papers or

15 I'll break your legs." See police reports attached hereto as **Exhibit 4.** With the relationship

16 between Lovison and Condon  soured beyond repair, Lovison and Condon executed a

17 "Settlement Agreement and Mutual Release" on February 2, 2005. A true and correct copy of

18 which is attached hereto as **Exhibit 5.**

19     Today, now that Trago's tequila products are no longer simply an idea but are tangible

20 products on store shelves, Lovison has second thoughts about his Settlement Agreement. As a

21 result, Lovison has recruited Kosty and others to join him in a war of attrition in the hopes that

22 excessive litigation will force a firehouse sale of Trago's assets. Douglas Lovison and his

23 confederates and their advocate have gone to great lengths to derail any opportunity for the

24 success of Trago International, Inc. They have made unsupported claims to the Internal

25 Revenue Service which resulted in an audit of Trago International, Inc. from 2004 through

26 2008. To date there has been no information of any improprieties, fraud or other defalcationsas

27 set forth in the testimony of the debtor's accountant, Gary Capata who participated in the IRS

28 audit. See Declaration of Gary Capata attached hereto as **Exhibit 12.**

DEBTOR'S MOTION TO EXPAND THE AUTOMATIC STAY

1    The same individuals are responsible for provoking a California Department of

2    Corporations inquiry of Christopher Condon and Trago International, Inc. As soon as the list of

3    Equity Security Holders was filed in the Debtor's Nevada bankruptcy case, letters from the

4    California Department of Corporations requesting information about their investment in Trago

5    International Inc. went out to all of the shareholders.  Trago has always sought and has

6    followed the advice of its attorneys in order to fully comply with all applicable securities laws.

7    This mal intentioned minority that represents approximately 7% of the debtors equity securities,

8    is utilizing the bureaucratic process in an attempt to further distract and cast aspersions on the

9    reputation of the Company. See President's letter to shareholders attached hereto as **Exhibit 13.**

10

11   2. LITIGATION AFFECTING ASSETS WITHIN TRAGO'S BANKRUPTCY ESTATE

12        The Debtor's assets have been the subject of extensive litigation over the last several

13   years. Lovison through his attorney Richard Lucal have made **10** motions for the appointment

14   of a receiver in **4** separate actions before **7** different judges since 2006 - ALL of the prior

15   motions to appoint a receiver have either been denied or rendered moot based on the dismissal

16   of the underlying complaint.  The eleventh motion for appointment of a receiver was under

17   consideration of the Honorable Judge Andrew C. Kauffmann at the time the debtor filed their

18   petition.

19        The Honorable Alicemarie H. Stotler dismissed the claimants prior federal court actions

20   three times.  Lucal, claimants' counsel, dismissed LOVISON'S prior state rescission action two

21
     court days before trial.  Douglas Lovison and his lawyer are guilty of judge/forum shopping;
22
     LOVISON and KOSTY'S claims are barred by the compulsory cross-complaint rule; and
23
24   LOVISON is barred by his settlement and release. The repeated stranglehold of litigation

25   commenced by this group is nothing more than a hostile takeover of the Debtor, Trago

26   International, Inc.

27
          A. **Chronology of Case History Filed Against Trago International.**
28

**December 21, 2006** Lovison files suit in San Diego Superior Court Case No. GIN057943 for rescission of the Mutual Settlement and Release Agreement. **April 9, 2007** Lovison filed similar allegations adding trademark infringement in Federal District Court Case SACV07-408. **April 20, 2007** The San Diego rescission case was transferred to Orange County Superior Court Case No. 07CC06127. **July 2, 2007** The "Trademark case" in the Central District of California Case no. SACV07-408 was dismissed for lack of ownership in the Trademark and hence no Federal Question. **May 8, 2008** Lovison filed a Voluntary dismissal of the rescission case in Orange County Superior Court Case 07CC06127. **May 8, 2008** United States District Court for the Central District of California Case no. ACV08-0514, Lovison files federal RICO claims that were dismissed by the Honorable Alicemarie Stotler with prejudice for lack of specificity and standing issues. **December 2008** Notwithstanding the foregoing dismissal with prejudice, Lovison filed RICO claims again in Los Angeles Superior Court Case No YC058784. **February 2009** the above Case No YC058784 was removed to Federal Court Case no. CV09-1121 GHK. **March 2009** Lovison voluntarily amends his complaint abandoning the RICO claims and it is therefore remanded back to State Court and is pending.

## B. Cases that have an effect on the Debtor Estate

Desoto v. Mediano, et. al. Los Angeles Superior Court Case No YC058784 Plaintiffs have motioned the court for the appointment of a Receiver, the court stayed its ruling pending the bankruptcy but has allowed the case to proceed against the non-debtor parties. The Plaintiffs have propounded discovery against Christopher Condon the CEO of the Debtor and are demanding documents in the possession of the Debtor. (See Request For Production of Documents attached hereto as **Exhibit 6.**) Additionally, Plaintiffs are also proceeding against Defendant, Michael Mediano. Mediano has filed a cross complaint against the debtor for

DEBTOR'S MOTION TO EXPAND THE AUTOMATIC STAY

indemnity.  Any action against Mediano will in effect directly affect the assets of the Debtor. A

copy of Michael Mediano's Cross-Complaint attached hereto as **Exhibit 7.)**

 Trago, et. al. v. Montgomery, et. al., case no. YC054317, Defendants have submitted a

Judgment to the Superior Court of the State of California, County of Los Angeles seeking

recovery of attorneys fees' See **Exhibit 8**. The Judgment seeks recovery from the Debtor, Trago

and the CEO Christopher Condon jointly and severally which will directly affect Trago's assets

and their availability to satisfy creditors.

Montgomery v. Trago International, Inc., et. al., case no 07CC06801 filed in Orange

County Superior Court against the Debtor and Non-Debtor parties.  As such, the claims seeking

discovery in the possession of the Debtor and recovery from the Debtor, will directly affect the

assets and their availability to satisfy creditors in this bankruptcy.

Flores v. Condon, case no. 30-2009 00124558, the shareholder plaintiff seeks to compel

a repurchase of Trago shares by the Debtor's Chairman.  As such, the discovery in the

possession of the Debtor will affect Trago's assets and their availability to satisfy creditors.

Balestra v. CIG, Mediano, Los Angeles arbitration case FINRA No. 02208, a group of

Trago shareholders: have made claims against Chicago Investment Group, LLC and Michael

Mediano regarding their investment in the Debtor.  These shareholders filed their claims with

the Financial Industry Regulatory Authority, Division of Arbitration, and the case is currently

pending in arbitration.  As a result, Michael Mediano has made a demand for indemnification

from the Debtor, which indemnification claim shall have a direct affect upon the Debtor's

assets and their availability to otherwise satisfy creditors. See **Exhibit 9**.

Also in Condon, et.al. v. Lovison, et. al., pending in San Diego Superior Court as Case

No. 37-2009-00092286-CU-NP-CTL, Lovison and his attorney, Richard Lucal, are seeking

DEBTOR'S MOTION TO EXPAND THE AUTOMATIC STAY

attorneys' fees and costs from the Debtor.  Counsel for Lovison and Lucal recently requested that Trago stipulate to relief from the automatic stay.  See **Exhibit 10**.  Trago refused to stipulate because the automatic stay is vital to Trago's reorganization efforts.

## 2.  ARGUMENT

A.  The Automatic Stay Protects All Property of The Bankruptcy Estate.

The automatic stay protects the assets of the bankruptcy estate, regardless of whether defendants are a bankrupt debtor.  The focus of the automatic stay is the property of the bankruptcy estate.  Because the subject matter of the written discovery requests in Desoto v. Mediano, et. al, in Los Angeles Superior Court case no. YC958784, are the books and financial records of Trago, are also property of the Trago  bankruptcy estate, the automatic stay imposed by 11 U.S.C. § 362 applies to that action which seeks to discovery from Trago's principal's as to property within Trago bankruptcy estate.

The purpose of the automatic stay is "to prevent dismemberment of the estate and to enable an orderly distribution of property." See In re Spaulding Composites Company, Inc., 207 B.R. 899 (1997).  "The 'automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations." See In re Gruntz, 202 F.3d 1074, (9th Cir. 2000) quoting MacDonald v. MacDonald, 755 F.2d 715, 717 (9th Cir. 1985).  "The automatic stay also 'assures creditors that the debtor's other creditors are not racing to various courthouses to pursue independent remedies to drain the debtor's assets.'" See In re Gruntz, 202 F.3d 1074, (9th Cir. 2000) quoting Dean v. Trans World Airlines, Inc., 72 F.3d 754, 755-56 (9th Cir. 1995).  In this case, Trago is faced with precisely that scenario: claimants  independently pursuing their remedies seeking to drain Trago's assets.

In In re Spaulding Composites, the district court held that the automatic stay did not stay a suit between two non-debtors which had no effect upon the bankruptcy estate.  However, in the present case, the subject litigation cases are not simply a disputes between two non-debtors, these cases seek to prevent the Debtor from using property of the estate, *i.e.*, intellectual

DEBTOR'S MOTION TO EXPAND THE AUTOMATIC STAY

property rights.  Therefore, unlike in <u>In re Spaulding Composites,</u> the automatic stay halts the

subject litigation because the subject litigation has a direct effect upon the bankruptcy estate.

Further, <u>In re Edgins</u> addressed the question of whether a bank/creditor may defer

withdrawal of funds from the debtor's account without violating the automatic stay.  <u>Id.</u>  The

Court held that the bank may defer access because the bank maintained the status quo and did

not attempt to recover a claim from the bankruptcy estate.  <u>Id.</u>  In the present case, claimants in

the afore-mentioned cases are not interested in maintaining the status quo.  Instead, permitting

this case to go forward wherein claimants seek to drain Trago of its assets will not maintain the

status quo of Trago's bankruptcy estate.

B.  The Automatic Stay Is Designed To Benefit Trago's Creditors, Without Regard to the
Benefit to Non Debtor Defendants

The Court should find the automatic stay protects the assets of the bankruptcy estate  to the

benefit of the Debtor's creditors.  Compare <u>In re Spaulding Composites Company, Inc.</u>, 207

B.R. 899, 908 (9th Cir. BAP 1987)( where the court stated that the automatic stay cannot be

used to stop litigation which leaves the debtor and estate property untouched).  Here, the estate

property is not untouched by the subject  litigation.  Instead, the automatic stay halts this

litigation because it touches and seeks to prevent the Debtor from using property of the

bankruptcy estate.

The Court should follow <u>A.H. Robins Company v. Piccinin</u>, 788 F.2d 944 (4th Cir. 1986)

because it does not contradict any Ninth Circuit case law and is well grounded.  In <u>A.H. Robins</u>,

the Court concluded that the automatic stay provision of the bankruptcy code, Section 362(a)(3)

"directs  stay of any action, *whether against the debtor or third-parties*, to obtain possession or

to exercise control over property of the debtor."  <u>Id.</u> at 1001.(Emphasis is original).  The Court

went on to describe that property of the estate in the bankruptcy context means "all the

following property, wherever located . . . all legal or equitable interests of the debtor in the

property as of the commencement of the case."  <u>Id.</u> at 1001.

While the automatic stay may be extended to non-debtor defendants under unusual

circumstances and upon the application of the preliminary injunction standard, in the present

DEBTOR'S MOTION TO EXPAND THE AUTOMATIC STAY

1    case, the stay is not extended beyond Trago's bankruptcy estate which is the fundamental

2    purpose of the stay, *i.e.*, protection of the assets of the estate.  For instance, in In re Chugach

3    Forest Products, Inc., the Ninth Circuit refused to apply the automatic stay provision where the

4    challenged collection efforts did not directly exercise control over the debtor's assets.  Id at 245

5    Instead, the collection efforts seized control over a vessel that was not the debtor's property.

6    Id.  Upon the release of the vessel, the debtor enjoyed full control of the cargo on board; thus,

7    the seizure merely delayed the debtor's expected receipt of cash.  See Id. at 245.

8        In present case, claimants do not seek to delay Trago's use of its assets.  Instead, claimants

9    seeks direct control over the Trago's assets.  Accordingly, the Court should follow A.H. Robins

10   Company v. Piccinin, protect the bankruptcy estate from dismemberment.

11       C. Preliminary Injunction Standard.

12       In the alternative, the Court should issue a preliminary injunction preventing the subject

13   litigation from going forward and depleting the assets in the bankruptcy estate.  Under 11

14   U.S.C. § 105(a), a bankruptcy court "may issue any order, process, or judgment that is

15   necessary or appropriate to carry out the provisions of this title." Section 105(a) gives the

16   bankruptcy courts the power to stay actions that are not subject to the 11 U.S.C. §

17   362(a)automatic stay but "threaten the integrity of a bankrupt's estate." See In re Canter, 299

18   F.3d 1150, 1155 (9th Cir.2002)(citation and quotation marks omitted); see also Ingersoll-Rand

19   Fin. Corp. v. Miller Mining Co., 817 F.2d 1424, 1427 (9th Cir.1987). The injunction is in effect

20   an extension of the automatic stay, halting another proceeding to avoid disruption of the

21   debtor's reorganization.

22       Any debtor, including Trago, attempting to reorganize through the bankruptcy code may

23   seek to enjoin its creditors or other third parties from suing members of the company's senior

24   management team during the course of the reorganization proceedings.  The rationale behind

25   enjoining such litigation is so that the debtors' senior management members can devote their

26   time and resources to the reorganization effort without distraction.

27       Courts throughout the country have applied differing standards in determining when the

28   granting of an injunction of proceedings against a non-debtor is appropriate. Recently, the

DEBTOR'S MOTION TO EXPAND THE AUTOMATIC STAY

Ninth Circuit Court of Appeals established the standard for enjoining action against non-debtor

defendants.  In <u>In re Excel Innovations, Inc.</u>, 502 F.3d 1086 (9th Cir. 2007), the Court held that

in determining whether to issue a preliminary injunction enjoining proceedings against a non-

debtor pursuant to section 105(a), the Court must apply the traditional preliminary injunction

standard. Under this standard, the court must balance the debtor's likelihood of success in its

reorganization efforts against the relative hardship of the parties, in addition to considering the

public interest, if warranted. Further, the party seeking the injunction must provide evidence

supporting each of the required elements for the issuance of injunctive relief.

In <u>In re Excel Innovations</u>, the Ninth Circuit established that the Court may issue an

injunction, pursuant to section 105(a), provided that the Court considers the following: "[1]

whether the debtor has a reasonable likelihood of a successful reorganization, [2] the relative

hardship of the parties and [3] any public interest concerns, if relevant." See <u>In re Excel</u>

<u>Innovations, Inc.</u>, 502 F.3d 1086. The test is meant "to ensure that stays would not be granted

lightly." <u>Id.</u>

In so holding, the Ninth Circuit applied the traditional non-bankruptcy standard for granting

a preliminary injunction, which requires the moving party to show the following:

(1) a strong likelihood of success on the merits,
(2) the possibility of irreparable injury…if preliminary relief is not granted,
(3) a balance of hardships favoring the plaintiff and
(4) advancement of public interest, where applicable.

Under this traditional standard, a court may also grant the injunction by demonstrating one

of the following: "probability of success on the merits and the possibility of irreparable injury,

or that serious questions are raised and the balance of hardships tips sharply" in the plaintiff's

favor.  In the present case, the Court should grant the present Motion because each of the above

factors weighs in favor of the Debtor.  The Court should protect the Debtor's assets so that it

may successfully reorganize as provided in the bankruptcy code.

**(i) The Court Should Enjoin The Subject Litigation Because The Debtor Has A**
**Reasonable Likelihood Of A Successful Reorganization,**

The bankruptcy court should find that the <u>Desoto v. Condon</u> action is a proper case to be

<u>DEBTOR'S MOTION TO EXPAND THE AUTOMATIC STAY</u>

enjoined by the bankruptcy court in the first instance. The resolution of the substantive issues in the <u>Desoto</u> case in the will substantially affect the administration of the estate.   The <u>Desoto v. Condon</u> action seeks to distort the debtor-creditor relationship and will prevent Trago from otherwise submitting a successful plan of reorganization.

### (ii) The Relative Hardship Of The Parties Weighs In Favor Of Enjoining The Subject Litigation.

This Court should enjoin the <u>Desoto v. Condon</u> action because it involves the question of title to the Trago "assets." To have that question determined by the California Superior Court would affect the orderly administration of the bankruptcy estate and essentially divest this Court of its jurisdiction to determine whether as asset is the property of Trago's bankruptcy estate.

### (iii)    The Relevant Public Interest Concerns Weigh In Favor Of Enjoining The Subject Litigation.

The Court should enjoin the subject litigation because those disputes cannot be resolved separately from the reorganization proceedings before this Court. For example, the 2005 Settlement and Release Agreement with Lovison is integral to the negotiations with Trago's creditors as part of its reorganization. Trago's reorganization seeks to settle all creditor claims against the estate, to the benefit of all the equity security holders. Therefore, the validity of the Lovison Settlement Agreement is necessary to the formulation of a reorganization plan that has to be acceptable to all creditors. The transfer of the Trago "Assets." was provided for, in and executed as an integral part of, the settlement agreement and must be validated for the reorganization plan to be confirmed by the bankruptcy court.

The Plaintiffs intentions are abundantly clear from the prayer contained in their verified 1st amended complaint where they pray individually and on behalf of Trago LP, wherein they pray for judgment affecting the assets of the Debtor, Trago. A copy of said prayer is attached hereto as **Exhibit 11**. Accordingly, the Court should enjoin the subject litigation from proceeding and depleting the assets of the bankruptcy estate to the distinct harm of all Trago's creditors.

### D. The Automatic Stay Does Not Prevent Debtor From Prosecuting Its Appeal.

There is currently an appeal pending before the California Court of Appeals wherein shareholder Lovison seeks review of an Order granting Trago's Motion to Dismiss in <u>Desoto et.</u>

1 | al. v. Condon et. al., District Court case no. 8:08-cv-00514-AHS-MLG, United States Court of

2 | Appeal for the Ninth Circuit, case no. 08-56832. Pursuant to In re Lyngholm, 24 F. 3d. 89

3 | (1994 10th Cir.), the automatic stay does not prevent the trustee or debtor in possession from

4 | seeking to have the Ninth Circuit Court of Appeals affirm the District Court's Order granting

5 | Trago's Motion to Dismiss.

**CONCLUSION**

7 | Based on all of the foregoing Defendants respectfully request the court order the

8 | Plaintiffs' action against the estate enjoined and Preliminary Injunction be issued Staying the

9 | State Court Action.

11 | Dated:  December 22, 2009

William C. Rawson, Attorney For
Trago International, Inc. Debtor

Case 09-28095-
24166

EXHIBIT    1

# Delaware

PAGE  1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "TRAGO INTERNATIONAL, INC." IS DULY INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL CORPORATE EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE SEVENTH DAY OF AUGUST, A.D. 2009.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "TRAGO INTERNATIONAL, INC." WAS INCORPORATED ON THE TWENTY-EIGHTH DAY OF OCTOBER, A.D. 2004.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES HAVE BEEN PAID TO DATE.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL REPORTS HAVE BEEN FILED TO DATE.

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 7463609

DATE: 08-07-09

3873386  8300

090762710

You may verify this certificate online
at corp.delaware.gov/authver.shtml

EXHIBIT    2



**Entered on Docket
December 18, 2009**

_____

**Hon. Linda B. Riegle
United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:

**TRAGO INTERNATIONAL, INC.**

|                      |
|----------------------|
| CASE NO: 09-28095 LBR |
| Chapter 11 |
| Date: December 16, 2009 |
| Time: 1:30 PM |

Debtor(s).

## ORDER DISMISSING CASE

Based upon the findings of fact and conclusions of law entered on the record at hearing conducted on the date and time set forth above, pursuant to 11 U.S.C. § 1112 and in accordance with Fed. R. Bankr. P. 9014 and 7052,

**IT IS ORDERED** that this case is dismissed without prejudice.

### ###

EXHIBIT    3

Lawrence J. La Rocca
Law Offices of Lawrence J. La Rocca
3780 12th Street
Riverside, California 92501
Tel. (951) 682-4900
Fax (951) 781-0115
Email laroccalaw@gmail.com

Attorney for Defendants, CHRISTOPHER CONDON,
TRAGO INTERNATIONAL, INC., TRAGO LP,
FX HOLDINGS INTERNATIONAL LTD, TRAGO USA, INC.,
CT HOLDINGS INTERNATIONAL, INC.,
PULSE ENTERTAINMENT GROUP LLC

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMMY DESOTO, an individual; GEORGE KOSTY, an individual; ANTOINETTE CARDENAS, an individual; and DOUGLAS LOVISON, an individual<br>**Plaintiffs**<br>**vs.**<br>MICHAEL MEDIANO, an individual; JOHN ADSIT, an individual; CHRISTOPHER CONDON, an individual; RICHARD CONDON, an individual; TRAGO LP, a British Virgin Islands limited partnership; FX HOLDINGS INTERNATIONAL LTD, a British Virgin Islands corporation; TRAGO USA, INC., a California corporation; TRAGO INTERNATIONAL, INC., a Delaware corporation; CT HOLDINGS INTERNATIONAL, INC., a Delaware corporation; PULSE ENTERTAINMENT GROUP, L.L.C., a Nevada limited liability company; RUVA INTERNATIONAL, INC., a Nevada Corporation; and DOES 1 through 50, **Defendants** | Case No. YC058784<br><br>Assigned to: Honorable Andrew C. Kauffman<br>Dept.:       B<br><br>**DECLARARTION OF CHRISTOPHER CONDON IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS MOTION FOR APPOINTMENT OF RECEIVER**<br><br>Hearing Date: May 29, 2009<br>Time:       8:30 a.m. |

COMES NOW CHRISTOPHER CONDON IN DECLARATION AS FOLLOWS:

### DECLARARTION OF CHRISTOPHER CONDON
### IN SUPPORT OF DEFENDANTS' OPPOSITION

1

I, Christopher Condon ("Condon"), declare as follows:

    1.  I am one of the defendants in this lawsuit. I have personal knowledge of all the matters set forth in this Declaration and if called upon to i testify thereto, I could and would competently do so.

### Background Facts Of This Business Dispute

    2.  In 2004, I was the Director of FX Holdings, a general partner of Trago L.P., which is a British Virgin Islands company. Trago L.P. owned certain assets, including a patent on a tequila liquor bottle design and also owned a trademark on the name "Trago." Trago L.P. intended to develop and market high-end tequila under the "Trago" trademark, using its patented liquor bottle design.

    3.  Plaintiff Douglas Lovison ("Lovison") was a partner of mine in Trago, L.P. A friend of Lovison, Tyrone Montgomery ("Montgomery"), worked for Trago, L.P. and had an approximately one percent ownership interest in Trago, L.P. Other friends of Lovison, Arthur Castillo ("Castillo") and Philip Soto Mares ("Mares"), worked for Trago, L.P. as consultants. Finally, another Lovison friend, George K'osty ("Kosty"), raised some capital for Trago, L.P.

    4.  Lovison, along with Montgomery, orchestrated and conspired with Kosty, Castillo and Mares to destroy my business reputation and the business of Trago International, which was formed after they destroyed Trago L.P. as I explain below. Apparently, all of them, including Kosty, Castillo and Mares, contend I owe them money, and they have willfully and aggressively engaged in a malicious conspiracy to ruin me and Trago International. I do not owe any money to any of them.

**DECLARARTION OF CHRISTOPHER CONDON
IN SUPPORT OF DEFENDANTS' OPPOSITION**

5.  Lovison and Montgomery each told me that they are friends and have known each other for 38 years. In fact, Montgomery's association and investment with Trago L.P. came about as a result of his long-time relationship with Lovison.

6.  On or about March 24, 2004, Lovison, Montgomery and Kosty barged into my apartment in San Diego, terrorized me, and wrongfully and forcibly took into their possession my cell phone, business records for Trago L.P., business cards of all my long-time business contacts, and my laptop computer, which contained business records necessary for the operation of Trago L.P.   Lovison handed me some papers and said "I want you to sit down and review and sign these papers or I'll break your f---ing legs." In demanding that I sign the papers, Lovison was trying to terminate me from Trago, L.P., while Montgomery had already left the apartment with my laptop and Kosty had my cell phone, business records, and the business cards of my business contacts made during my working life.  I observed Kosty filling his jacket and pants pockets with my business records and the business cards of my business contacts.  Lovison and Kosty are dangerous, and they scared me. Based on my previous conversations and relationship with Lovison and Kosty, it is my understanding that Lovison and Kosty are martial arts experts. Kosty is an instructor and owner of a business teaching martial arts in Oceanside, California.

7.  I did not want to be forced to read or sign Lovison's papers, and I ran outside to get my laptop, business records, documents and cell phone. While outside looking for Montgomery and Kosty, I used another person's cell phone and called the police. By the time the police arrived, Montgomery had returned my laptop, but I did not notice that he had removed the battery pack. Later, I learned that files and important business information were erased from my laptop computer at the time of this incident. The police ordered Kosty to return my cell phone.

**DECLARARTION OF CHRISTOPHER CONDON**
**IN SUPPORT OF DEFENDANTS' OPPOSITION**

3

However, Kosty has never returned the business records or business cards of my business

contacts. Attached hereto as Exhibit "A" and incorporated herein by this reference is a true and

correct copy the San Diego Regional Officer's Report dated March 29, 2004 that I obtained from

the police. The police report indicates that the police viewed this matter as a business dispute,

and there were no criminal charges brought.

    8.    On or about June 3, 2004, Montgomery entered my business office in Carlsbad,

California without my knowledge or consent, and he wrongfully took into his possession investor

and corporate documents that belonged to Trago L.P. Montgomery sent me an e-mail stating that

he would return the documents if I gave him $60,000. I reported this incident to the Carlsbad

Police. Attached hereto as Exhibit "8" and incorporated herein by this reference is a true and

correct copy of the Carlsbad Police Department Officer's Report dated June 9, 2004 that I

obtained from the police.

    9.    As set forth in the police report, the police officer interviewed Montgomery and

Montgomery admitted taking the documents and further stated that he would not return the

documents until he received money from me. The police report further reflects that while the

police were interviewing Montgomery, Lovison was with Montgomery. Again, no further action

was taken by the police as their report indicates that they viewed this matter as a business dispute

to be resolved in civil court. Montgomery refused to return Trago L.P's records and continues to

refuse to return the records.

    10.    As a consequence of these and other actions by Lovison, it became impossible for

Trago L.P. to operate its business. Indeed, Lovison's refusal to return Trago L.P.'s corporate

records and documents caused Trago L.P. to cease operations. Trago L.P. decided that it was in

its best interest to sell its principal assets, including its trademark and patent, for 'cash. Trago

**DECLARARTION OF CHRISTOPHER CONDON
IN SUPPORT OF DEFENDANTS' OPPOSITION**

4

L.P.'s Articles of Limited Partnership, section 6.1, allow it to sell its assets for a partnership purpose, without the consent of any limited partners. The decision to sell the assets was for a partnership purpose and was caused by the disruptive and harmful acts of Lovison.

11.   On or about December 2, 2004, I formed defendant Trago International. As an act of good faith and integrity, I moved approximately 95 percent of the Trago L.P. limited partners, including Lovison, into Trago International so that they could maintain their investments in the Trago International business, and I signed mutual releases with them. Trago International is not a publicly traded company.

12.   In June 2005, Trago International executed a series of documents and agreements in order to purchase certain assets from Trago, L.P., including Trago L.P.'s patent and trademark for $500,000 cash. Trago L.P. retained the right to also use the patent and trademark for 10 years. Trago L.P. is entitled to receive payments from Trago International pursuant to the asset purchase agreement, which has rejuvenated Trago L.P.

**Settlement Agreement Between Lovison and Condon**

13.   On February 12, 2005, Lovison and I entered into a Settlement Agreement and Mutual Release wherein we agreed to "forever" resolve. any possible disputes between us with regard to, among other things, Trago L.P., Trago International and Trago L.P's assets, including corporate records, domain names, trademarks, and bottle patents and formulas for Trago Tequila. Attached hereto as Exhibit "C" and incorporated herein by this reference is a true and correct copy of the Settlement Agreement signed and dated February 12, 2005. Furthermore, we agreed "not to make any defamatory and libelous communication to any person regarding the other." (Settlement Agreement, Non-disparagement clause, 11 8.)

**DECLARARTION OF CHRISTOPHER CONDON
IN SUPPORT OF DEFENDANTS' OPPOSITION**

14. Trago International is now, and has been since 2004, in the process of raising investment money, entering into distributorship agreements, and marketing and selling tequila under the Trago name.

15. Lovison, having successfully destroyed the business of Trago L.P., has now conspired with his friends to destroy the business of Trago International as well.

II Lovison's Defamatory e-mails

16. In furtherance of their conspiracy to ruin me and Trago International, Lovison and his friends have sent numerous e-mails to Trago International's employees, shareholders, consultants, potential investors, investors, potential distributors, and distributors. The e-mails accuse me of fraud, criminal actions, deceit, illegal activities, stealing, incompetence, and unethical business practices. The e-mails have also falsely stated that Trago International does not own the patent and trademark it purchased from Trago, L.P.

Montgomery's Defamatory e-mails

17. In October 2006 while I had been working diligently to make Trago International's business take off and succeed, Montgomery sent me numerous e-mails wherein he falsely accused me of illegally using Trago L.P.'s assets. Montgomery further threatened to contact Trago International's employees, shareholders, consultants, potential investors, investors, potential distributors, and distributors and make them aware of his false accusations. For instance, Montgomery even specifically identified some of the persons he intended to contact, such as Young's Market, Trago International's largest distributor of tequila products, and Vern Underwood, who is the Chairman and CEO of Young's Markets. An e-mail dated October 25, 2006 from Montgomery is particularly vulgar and ominous. I decline to repeat Montgomery's

**DECLARARTION OF CHRISTOPHER CONDON
IN SUPPORT OF DEFENDANTS' OPPOSITION**

6

foul language here, but it is attached to this declaration. Attached hereto collectively as Exhibit "0" and incorporated herein by this reference are true and correct copies of Montgomery's e-mails that I received and that are identified by date as follows: October 21, 2006; October 22, 2006; October 23, 2006; October 24, 2006; October 25, 2006 at 8:36 p.m.; and October 25, 2006 at 8:31 p.m. Montgomery's e-mail address is "imagefx13@yahoo.com."

18.   On or about November 1, 2006, I received another e-mail from Montgomery. In his e-mail, Montgomery falsely accuses me of wrongfully taking and using Trago L.P.'s assets .. However, the e-mail was not sent solely to me, as he did with the October 2006 e-mails identified above. This e-mail dated November 1 was broadcast to Trago International's employees, shareholders, consultants, potential investors, investors, potential distributors, and distributors and for the purpose of destroying my reputation and Trago International's business. Attached hereto as Exhibit "E" and incorporated herein by this reference is a true and correct copy of the e-mail dated November 1, 2006 that I received from Montgomery. The "cc" line of e-mail reflects that Montgomery sent the e-mail to many people, including the following persons: a government regulator at the alcohol, tobacco and firearms department, Susan Raichel; important Trago International employees M. Myden, M. McDonough, and Victoria Pevan; Cindy Yearout who has loaned funds to Trago International; Michael Mediano who has been attempting to raise capital for Trago International (some of his potential investors withdrew when they learned of this e-mail); Taryn Battram (tbattram@pulse-ent.com) whose mother, Lois Battram, is an investor in Trago International; Doug Denhart, a former employee of Trago International; Robert at Bar Media.com who operates a website and blog regarding alcohol and bar business news (robert@barmedia.com); and Montgomery's co-conspirators Lovison (kromefx@yahoo.com), Kosty (gkosty@roadrunner.com) and Castillo (casaajc@verizon.net). In addition, Montgomery

**DECLARARTION OF CHRISTOPHER CONDON
IN SUPPORT OF DEFENDANTS' OPPOSITION**

7

1 stated at the end the e-mail that he sent copies of the e-mail by regular mail to the following

2 persons: Vern Underwood, Jr., the CEO of Young's Market, Trago International's largest

3 distributor; Young's Market Company's legal counsel; Larry Chaplin who is an attorney for the

4 Chaplin Family who operate and control Southern Wine and Spirits, a major distributor spirits;

5 NDC legal counsel - NDC is National Distribution Company and a large distributor of spirits;

6

7 Peter Mawn who is a potential investor in Trago International; Lois Battram a potential investor

8 in Trago International who withdrew when she learned of this e-mail; Charlie Somers, a potential

9 investor of additional funds in Trago International who decided not to invest additional funds due

10 to this controversy created by Lovison, Montgomery and their co-conspirators; Doug Moxley

11 who is an investor in Trago International; Tony Delanzo who is an investor in Trago

12 International; Peter Whalley who is an investor in Trago International; Ken Kribel, who is an

13

14 investor in Trago International and Vice President of National Accounts for Southern Wine and

15 Spirits; Annette Yeomans who is an investor in Trago International; Gregg Durmer who is a

16 potential investor of additional funds in Trago International and Ronald Harris who is an

17

18 investor in Trago International. If sending the e-mail to the above persons was not enough,

19 Montgomery stated the following: "And just for the heck of it I blind copied several other

20 individuals, so careful who you lie to, Chris."

21 **Lovison's e-mail**

22

23 19. On or about November 2, 2006, I received an e-mail from Ali Ghanbarian, an

24 influential person in the beverage and spirits industry in San Francisco. Mr. Ghanbarian

25 forwarded to me an e-mail he received from

26 Lovison on November 1. In Lovison's e-mail to Ghanbarian, Lovison stated

27

28
**DECLARARTION OF CHRISTOPHER CONDON
IN SUPPORT OF DEFENDANTS' OPPOSITION**

8

"Ali, FYI, Doug" and attached Montgomery's widely broadcast e-mail dated November 1 that falsely accuses me of wrongfully taking and using Trago L.P.'s assets. Attached hereto as Exhibit "F" and incorporated herein by this reference is a true and correct copy of Ali Ghanbarian's e-mail dated November 2 forwarding Lovison's e-mail dated November 1.

**Castillo's e-mail**

20.  Castillo sent me an e-mail dated November 1, 2006 and he Broadcast it to Trago International's eli1-ployees, shareholders, consultants, potential investors, investors, potential distributors, and distributors, including all the people who received Montgomery's e-mail dated November 1, 2006 identified above. Attached hereto as Exhibit "G" and incorporated herein by this reference is a true and correct copy of Castillo's e-mail dated November 1. In his e-mail, Castillo accuses me of not paying money owed to him and further accuses me of exercising bad business judgment. I deny Castillo's accusations. In addition, Castillo makes a thinly veiled threat to use his connections with all major distributors to spread his accusations concerning me.

**Kosty's e-mail**

21.  On November 2,2006 I received an e-mail from Kosty wherein Kosty falsely accuses me of improprieties with regard to the assets of Trago International. Kosty broadcast his e-mail to all the people who received the above-described e-mails from Montgomery and Castillo. Attached hereto as Exhibit "H" and incorporated herein by this reference is a true and correct copy of seven pages of e-mails beginning with an e-mail from Castillo dated November 3, 2006 and on the second page of the exhibit is Kosty's e-mail dated November 2, 2006 addressed to Castillo and copied to all the people who had been copied on the e-mails described above.

**Mares' e-mail**

**DECLARARTION OF CHRISTOPHER CONDON
IN SUPPORT OF DEFENDANTS' OPPOSITION**

9

22.   On November 2, 2006 Condon received an e-mail from Mares wherein Mares falsely accuses Condon of improprieties with regard to the assets of Trago International. Mares broadcast his e-mail to all the people who received the above-described e-mails from Montgomery, Castillo, and Kosty. Attached hereto as Exhibit "I" and incorporated herein by this reference is a true and correct copy of Mares' e-mail dated November 1.

## Trago International's Investors Are Concerned

23.   On November 2, 2006, I received an e-mail from Michael Mediano, who has been working to find investors for Trago International. In his email, Mr. Mediano states that he is receiving telephone calls and emails from investors and potential investors regarding the defamatory emails from Lovison and the others. Attached hereto as Exhibit "J" and incorporated herein by this reference is a true and correct copy of Mr. Mediano's e-mail dated November 2. I have been informed by Mr. Mediano that he lost some potential investors as a result of Lovison's email campaign against me and Trago International. .

Another e-mail From Montgomery

24.   On November 9, 2006, I received another e-mail from Montgomery. He taunted me in the e-mail by pointing out that he has secured a Trago Tequila domain name ("tragotequila.com") nearly identical to Trago International's domain name of "trago-tequila.com." Furthermore, he foreshadows further problems from him and the other Defendants when he stated: "Storm clouds, they are abrewin!" Attached hereto as Exhibit "K" is a true and correct copy of Montgomery's e-mail dated November 9.

**DECLARARTION OF CHRISTOPHER CONDON
IN SUPPORT OF DEFENDANTS' OPPOSITION**

10

25.  As a result of the conduct described above, Trago International has lost potential investors, and I believe Trago has lost potential distribution contracts as well. Also, I have had to refute the false allegations when responding to questions from my employees, distributors, lawyers for distributors, consultants, and investors in Trago International. This has been an embarrassing, debilitating, and harmful experience for me and my efforts to launch Trago's tequila products into the marketplace.

**Lovison And Montgomery Have Both Filed Actions Against Me and Trago, Using Attorneys That Share Offices.**

26.  As I have said, Lovison has orchestrated these malicious acts with Montgomery and the others. Lovison and Montgomery are even coordinating litigation in San Diego County against me and Trago International. Lovison filed this lawsuit on December 22, 2006 against me and Trago International, and Montgomery filed another lawsuit on December 22, 2006 against me and Trago International in San Diego County Superior Court, North County Branch, as case number GIN057668.

27.  Lovison's and Montgomery's attorneys share offices together at the same office address, 969 Vale Terrace Drive, Vista, California 92084.

**Lovison Has Benefitted From Releases by Other Investors.**

28.  Lovison was not only an investor in Trago LP, he was also one of the fiduciaries. When he participated in the thefts that incapacitated the company, causing its business to collapse, he created liability for himself to other investors.

29.  The Settlement Agreement (Exhibit C) that I entered into with Lovison states that each of us will use our best efforts to obtain similar settlements from the other investors in Trago

DECLARARTION OF CHRISTOPHER CONDON
IN SUPPORT OF DEFENDANTS' OPPOSITION

11

LP. I did my part, obtaining settlements from a total of 17 of the investors. Lovison benefitted from those settlements, which included releases of his liability as a fiduciary to the LP.

30.   I also tried to settle with the balance of the investors, but they were controlled by Lovison and refused to settle. The Appointment of a Receiver Would Be Extremely Damaging to Trago International and to its Investors.

31.   The 17 investors in Trago LP who settled their claims against Mr. Lovison all became shareholders in Trago International, Inc. That was one of the considerations given to them as part of the settlement. However, those shareholders did not invest any new money in Trago International, Inc.

32.   Nonetheless, a large amount of investment capital has been raised by me to start up the business of Trago International, Inc. and get it going. So far, I have raised more than $8.3 million. The appointment of a receiver or the issuance of an injunction would jeopardize the investments by the people who put up this money. As a result of the emails referenced above, the investors are all aware of Mr. Lovison's lawsuit. Many of them are angry at him and are prepared to file lawsuits against him for interference with the operation of the business of Trago International, Inc.

33.   Lovison, himself, has contributed no investment capital whatsoever to Trago International and has not successfully brought in a single investor.

34.   In spite of the interference by Mr. Lovison and his friends, as detailed above, the business of Trago International, Inc. is highly successful. Right now, we are distributing our product through three major multi-billion dollar distributors as well as wine and beer distributors in 24 markets in the us nationwide and two provinces in Canada Puerto Rico and Australia. The

**DECLARARTION OF CHRISTOPHER CONDON**
**IN SUPPORT OF DEFENDANTS' OPPOSITION**

12

appointment of a receiver over the business or the issuance of an injunction would destroy our distributor relations and destroy the business of the company.

35.    On May 15, 2009, I received an email from one of the shareholders in Trago International. Attached to the email was a letter from Richard A. Lucal that was sent to many of the Trago International Shareholders as well as employees and other persons unknown as displayed in the list of email addresses that the letter was transmitted too. The letter is another example of Mr. Lucal's efforts to rally the shareholders by disseminating information that is either false, out of context, incomplete or derogatory. A true and correct copy of this email including its sent list and Mr. Lucal's letter is attached hereto as Exhibit " L " Mr. Lucal is making misrepresentations to Trago Shareholders in an effort to sway them into supporting his efforts to have a receiver appointed or an injunction is issued.

36.    Our supplier, who provides us with all of our tequila, will cancel our contract if a receiver is appointed or an injunction is issued.

Condon Owns a Controlling Interest in Trago International, Inc, and
Owns The State and Federal Licenses.

37.    At the moment, I own approximately 68% of the voting shares in Trago International, Inc. As additional investors are brought in in the future, that percentage will be diluted, but I currently am the controlling shareholder. By contrast, Mr. Lovison owns less than five percent of the voting shares.

38.    I hold all of the federal and state licenses that allow us to sell our product. Without my licenses, Trago International will go out of business.

**DECLARARTION OF CHRISTOPHER CONDON
IN SUPPORT OF DEFENDANTS' OPPOSITION**

13

1    I declare under penalty of perjury and the laws of the State of California that all of

2    the foregoing matter is true and correct. Executed on this 15th day of May 2009 at Newport

3    Beach, California.

4

Dated: May 15, 2009

5
_____
Christopher Condon,  Declarant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARARTION OF CHRISTOPHER CONDON
IN SUPPORT OF DEFENDANTS' OPPOSITION**

14

EXHIBIT    4

Sent By: S.D.P.D. Records                      619 233 4206;              01      05 18:14;    JetFax #704;Page 3/4

**San Diego Regiona.**
**Officer's Report Narrative**

Incident Number
04030064757

| Page 2 of 4 | | | | Case Number 04020900 | |
| Code Section And Description (one incident only) PC / 488 / PETTY THEFT | | Date 03/24/2004 - 03/24/2004 | Day of Week WED - WED | Time 14:30 - 16:04 |
| Location Of Incident (Or Address) 2830 CARMEL COUNTRY RD #112 | | | City SAN DIEGO | District | Beat 135 |
| Person(s) Involved: Victim CONDON, CHRISTOPHER | | | | | |
| Suspect (If Named) | | | | | |
| Property Tag No.(s) | | | | | |

I was expecting my business partner, Douglas Lovison so I had left the front door to my apartment slightly open. He walked in with Ty Montgomery and George Kosty. Doug handed me papers and said "I want you to sit down and review these papers or I'll break your legs". He was trying to terminate me from my own company. Ty picked up my lap top computer and walked to the parking lot. George picked up my cell phone. They are martial arts experts. Doug and Ty's hands are registered as weapons. I didn't want to read the papers and went out to get my laptop. I asked outside for his cell phone and called the police. By the time the police arrived Ty had put my laptop back in the apartment. I didn't realize at the time the battery pack was missing. The police made George give me back my cell phone.

I want to press charges for them breaking into my apartment, stealing my things and threatening to kill me.

**EVIDENCE:**
None

**INJURIES:**
None

**PROPERTY DAMAGE:**
None

**FOLLOW-UP:**

Condon gave me the following numbers;

Douglas Lovison, cell (760) 803-5925, home (760) 634-2514.
Tyrone Montgomery, cell (760) 458-9889, home (760) 945-4338.
George Kosty, cell (760) 803-5826.

Condon told me he has been on speaking terms with Lovison since this incident as the are trying to resolve their business issues.

**RELATED REPORTS:**
None
"ENTER TEXT HERE"

Approved By: Sgt Tom Rizzo #2705

| Reporting Officer VANESSA HOLLAND | ID # 4933 | Division NTRU | Approved By | Date of Report 03/29/2004 | Time 20:52 |

ORIGINAL                                                          Continued Y

16

EXHIBIT __A__

Sent by: S.D.P.D. Records    619 233 4206;    01/    5 18:14;    JetFax #704;Page 4/4

| Continued From:<br>OFFICER'S REPORT ONLY | | | | San Diego Regional<br>**Officer's Report Narrative** | | | Incident Number<br>04030084757 | |
|---|---|---|---|---|---|---|---|---|
| Page<br>3 of 4 | | | | | | | Case Number<br>D4020800 | |
| Code Section And Description (one incident only)<br>PC / 488 / PETTY THEFT | | | | Date<br>03/24/2004 -<br>03/24/2004 | | Day of Week<br>WED - WED | Time<br>14:30 - 15:04 | |
| Location Of Incident (Or Address)<br>12650 CARMEL COUNTRY RD #112 | | | | | City<br>SAN DIEGO | | District | Beat<br>185 |
| Person(s) Involved: Victim<br>CONDON, CHRISTOPHER | | | | | | | | |
| Suspect (if Named) | | | | | | | | |
| Property Tag No.(s) | | | | | | | | |

| Reporting Officer<br>VANESSA HOLLAND | ID #<br>4933 | Division<br>NTRU | Approved By | Date of Report<br>03/29/2004 | Time<br>20:52 |
|---|---|---|---|---|---|

ORIGINAL

Continued Y

EXHIBIT A

17

CARLSBAD POLICE DEPARTMENT
OFFICER'S REPORT
NARRATIVE

| | PAGE 1 of 1 | CASE NUMBER 04-4383 |
|---|---|---|

| CODE SECTION AND DESCRIPTION (ONE INCIDENT ONLY) Incident Report 488 PC Threats | DATE 06-03-04 | DAY OF WEEK Thursday | TIME Unknown |
|---|---|---|---|
| LOCATION OF INCIDENT (OR ADDRESS) 5441 Avenida Encinas | CITY Carlsbad | BEAT 40 | DISTRICT 3701 |

1
2  Christopher T. Condon CDL: D2562856 DOB: 03-22-76
3  5441 Avenida Encinas Suite B Wk # (760) 476-1048 Cell #(760) 908-7781
4  Carlsbad, Ca 92008
5
6  Tyrone Gaines Montgomery CDL: N8407271 DOB: 11-26-61
7  462 W. Los Angeles Dr Hm# (760) 945-4338 Cell# (760) 458-9989
8  Vista, Ca 92083
9
10  On 06-09-04, at about 1645 hours, I received a radio call to respond to the CBPD and investigate
11  a theft. Upon my arrival, I talked to reporting party Christopher Condon.
12
13  Statement of Christopher Condon (Reporting Party):
14  Condon told me that former employee Tyrone Montgomery had taken Investor and
15  Corporate documents that belonged to the Trago Tequila Company. Montgomery e-mailed
16  Condon. The e-mail said that Montgomery would return the documents if Condon gave him
17  $60,000. Condon said the documents were taken sometime around June 3rd.
18
19  On 06-09-04, at about 1735 hours, I called and talked to Tyrone Montgomery via Montgomery's
20  cell phone.
21
22  Statement of Tyrone Montgomery:
23  Montgomery told me he had worked for Trago Tequila Company and was responsible for
24  handling the corporate documents. Montgomery said the documents were always in his
25  possession and that he did not steal them. Montgomery went on to say that Condon owed
26  him money, and that he would not return the documents until he received the money.
27
28  While talking to Montgomery, he said that Christopher Condon's Managing Partner Doug Lovison
29  was in the car with him and was aware of the situation. I heard Montgomery tell Lovison that he
30  was on the phone with a Police Officer and that Condon was claiming Montgomery had stolen the
31  documents. I heard the subject that Montgomery had claimed to be Lovison say, "Really."
32  Montgomery continued to talk but his cell phone lost the signal and disconnected. I attempted to
33  call Montgomery back without success. I explained to Condon that he needed to contact his
34  Attorney and take Montgomery to civil court because of their former work relationship and dispute
35  over the documents. A crime case was not taken because of conflicting statements and lack of
36  evidence.
37
38  No evidence was taken.

| REPORTING OFFICER J. Boyce | ID NUMBER 5287 | DIVISION PATROL | DATE 06/09/04 | REVIEWER'S NAME | DATE |
|---|---|---|---|---|---|
| ARJIS 9 | | | | | CONTINUED |

EXHIBIT B

18

EXHIBIT    5