Richard A. Lucal
California Bar No. 143372
LAW OFFICES OF RICHARD A. LUCAL
969 Vale Terrace, Suite E
Vista, California 92084
Tel.: (760) 806-8141
Fax: (760) 806-8172
ral@looral.com

*Counsel for George Kosty
and Douglas Lovison*



FILED

JAN - 7 2010

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

In re:

TRAGO INTERNATIONAL, INC.,

Debtor.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: Case No.:  8:09-bk-24166-TA

Chapter 11

**MOTION TO DISMISS WITH
PREJUDICE FOR CAUSE UNDER 11
U.S.C. §1112(b) OR, IN THE
ALTERNATIVE, TO CONVERT TO A
CHAPTER 7 BANKRUPTCY
PROCEEDING OR APPOINT A
CHAPTER 11 TRUSTEE**

Hearing date: February 3, 2010
Hearing Time: 10:30 a.m.

ORIGINAL

Creditors George Kosty and Douglas Lovison hereby submit their Motion To Dismiss With

Prejudice for Cause under 11 U.S.C. §1112(b) or, in the alternative, to convert the case to a

Chapter 7 Bankruptcy or to appoint a Chapter 11 Trustee.   This is the second Chapter 11

bankruptcy proceeding filed by the Debtor.   Prior to the filing of the Petition in this action, on

September 28, 2009 and one day prior to a Los Angeles Superior Court's scheduled hearing to

appoint a receiver for the Debtor (case number YC058784 entitled Desoto, et.al. v. Mediano,

et.al.), the Debtor filed for Chapter 11 protection in Nevada Bankruptcy Court, case number 09-28095 – asserting venue in that forum based on the Debtor's use of a corporate agent office in Las Vegas.   However, on December 16, 2009, the Bankruptcy Court in Las Vegas, the Honorable Judge Linda Riegel presiding, dismissed the debtor's bankruptcy action pursuant to a motion to dismiss under 11 U.S.C. section 1112 and in accordance with Fed. R. Bankr. P. 9014 and 7052.   A copy of the Order and hearing transcript are attached hereto as Exhibits 1 and 2, and movants respectfully request that this Court take judicial notice of these Court records.   The Order (Ex. 1) incorporates findings of fact and conclusions of law entered on the record at the hearing.   At the December 16, 2009 hearing, Judge Riegel specifically found:  (1) venue was improper in Nevada as there was no legitimate connection between the Debtor and Nevada, and (2)  **"As to dismissal, it's appropriate because we have an action in California, the receivership, which Mr. Condon can certainly defend.  If there's no merit to that suit, that's the place for him to defend.  This business could not be reorganized.  All that it can be is a source for sorting out the rights and liabilities between the parties.   And whether one deems it as granting a motion to dismiss because of inability to effectuate a reorganization or abstention because this is best done in a state court abstention, the Court will grant the motion to dismiss."** (See, Exs. 1 and 2 [pp. 16:9-19:13 and, in particular, Ex. 2, pp. 18:18-19:3)  Despite these express findings by the Nevada bankruptcy judge, the Debtor filed another Chapter 11 reorganization bankruptcy in this Court the very day the order was entered in Nevada – December 18, 2009.

As the Nevada bankruptcy judge found, the Debtor has little or no ongoing operations, few, if any, continuing employees, and little in the way of assets.  Having nothing to effectively reorganize, the Debtor has filed this chapter 11 case for the sole purpose of frustrating a California court's pending appointment of a receiver over its few remaining assets and increasing the costs incurred by its creditors. As detailed in the declarations attached to the Request for Judicial Notice filed concurrently herewith, the Debtor entity has been and continues to be little more than a

2

**Motion To Dismiss With Prejudice**                    Case No.: BK-S-09-28095-LBR

vehicle for waste, misappropriation of assets, securities fraud, fraudulent conveyance, bankruptcy fraud and other abuses by its sole controlling officer, Christopher Condon, and the Debtor and Condon are currently under investigation by the IRS Criminal Investigative Division and the California Department of Corporations.

As detailed herein, the Debtor's bankruptcy filing in Nevada was "bad faith" and for improper purposes.  The Nevada bankruptcy filing was made with no possible basis for asserting proper venue, with schedules/petition rife with fraud, and with the Debtor committing a number of substantial post-petition wrongful acts.   In the Nevada bankruptcy and here, the Debtor's principal, Christopher Condon, has improperly claimed personal protection under the automatic stay and has apparently caused California attorneys for the Debtor to act upon his behalf in ongoing litigation without proper employment by estate.  (See Debtor's Motion to Extend the Automatic Stay, filed December 29, 2009).

If the Court is not inclined to dismiss the action, with prejudice, the moving  parties respectfully request that the case be converted to a Chapter 7 proceeding or that a Chapter 11 Trustee be appointed to prevent further fraudulent and criminal activities by Condon and continuing waste and abuse.

This Motion is supported by the following Memorandum of Points and Authorities, the Declarations of Richard A. Lucal attached hereto and the Request for Judicial Notice filed concurrently herewith, the other pertinent pleadings and papers on file herein, and the arguments of counsel to be made at hearing.

DATED this _5_ th day of January __, 2010.


_____
Richard A. Lucal
California Bar No. 143372
*Counsel for George Kosty*
*and Douglas Lovison*

**Motion To Dismiss With Prejudice**                    Case No.: BK-S-09-28095-LBR

## I.    RELEVANT FACTS

### A.    Introduction

While the Debtor recently and allegedly hired Paul Pegg to be its COO (See Req.Jud.Not., exs. 49, 50 and 54), Debtor TRAGO INTERNATIONAL, INC. is effectively controlled by its CEO, major shareholder and CEO and sole director, CHRISTOPHER CONDON.   Since October, 2008, the company has had no functioning offices, no substantial sales (with the exception of the liquidation of substantial inventory in a single sale during a pending bankruptcy and without Court approval), no functioning office, and no employees.  (See Req.Jud.Not., exs. 1, 2, 4, 7, 18, 24, 26, 34, 35, 51, 55, 56, 57, 59, 63, 64, 66, 68)

Since its inception, CHRISTOPHER CONDON has operated TRAGO INTERNATIONAL in a systematically fraudulent and illegal manner.   The fraudulent and illegal acts committed by CHRISTOPHER CONDON or his agents include extortion, embezzlement/theft, fraud, securities fraud, breach of fiduciary duty, wire/mail fraud, fraud on the U.S. Patent and Trademark Office, tax fraud, perjury, malicious prosecution, tax fraud and bankruptcy fraud. (See, Lucal Decl., filed herewith; Req.Jud.Not., exs. 1, 2, 3, 5, 6, 10, 11, 12, 16-21, 24-26, 30-31, 33, 40-42, 46-47,  51, 53, 54, 56, 57, 59, 60, 61, 62, 63, 64, 66, 67, 68, 71 and 72)  The Debtor and its principal have also systematically filed frivolous litigation against their victims, have threatened to file frivolous lawsuits against other victims and witnesses and have recently lost two of the three lawsuits filed – with substantial exposure for attorneys' fees, costs and malicious prosecution. (Lucal Decl., filed herewith; Req.Jud.Not., exs. 30, 46, 47, 48, 52, 59, 60, 66)   The Debtor and its principal is currently under investigation by the California Department Corporations and the Internal Revenue Service Criminal Investigative Division.  (See Req.Jud.Not., exs. 66 and 67; Lucal Decl., filed herewith)

A California Superior Court judge, considering overwhelming evidence of CHRISTOPHER CONDON's fraudulent and criminal conduct, had stated his firm intention to appoint a receiver for TRAGO INTERNATIONAL on September 29, 2009. (See Req.Jud.Not., ex. 59, subexhibits 27, 28)  Much of this evidence was submitted to the Nevada Bankruptcy Judge by the moving parties in support of a motion to dismiss and considered in issuing the order

4

1  dismissing the Nevada bankruptcy. (See, Req.Jud.Not., exs. 1-72)  Faced with the appointment of

2  a receiver and a loss of control of the company on September 29, 2009, CONDON directed that the

3  Debtor file a Chapter 11 proceeding in an inappropriate venue, Nevada, on September 28, 2009

4  and in a clear effort to keep CHRISTOPHER CONDON in control of an insolvent and non-

5  functional company.  CONDON could have only two purposes for this conduct:  (1) to avoid

6  discovery by the receiver of further evidence of fraudulent and criminal conduct; and (2) to allow

7  CONDON to continue efforts, announced by him in August of 2009, to solicit $20 million in

8  investment for this insolvent company.  (See, Req.Jud.Not., exs. 24, 25, and 26)

9         The same day that the Nevada judge dismissed the Debtor's bankruptcy proceeding

10  fraudulently filed in the wrong venue, the debtor filed this Chapter 11 proceeding.  At the

11  December 16, 2009 hearing, Nevada Bankruptcy Judge Riegel specifically found:  (1) venue was

12  improper in Nevada as there was no legitimate connection between the Debtor and Nevada, and (2)

13  **"As to dismissal, it's appropriate because we have an action in California, the receivership,**

14  **which Mr. Condon can certainly defend.  If there's no merit to that suit, that's the place for**

15  **him to defend.  This business could not be reorganized.  All that it can be is a source for**

16  **sorting out the rights and liabilities between the parties.   And whether one deems it as**

17  **granting a motion to dismiss because of inability to effectuate a reorganization or abstention**

18  **because this is best done in a state court abstention, the Court will grant the motion to**

19  **dismiss.**"  (See, Exs. 1 and 2 [pp. 16:9-19:13 and, in particular, Ex. 2, pp. 18:18-19:3)

20       **B.      CONDON and the Debtor Committed Substantial Bankruptcy Fraud and**

21  **Post-Petition Wrongful Acts in Conjunction with the Prior Nevada Bankruptcy Filing.**

22        In the Nevada bankruptcy, the Debtor, under the control of CONDON, systematically lied

23  to the Court in its petition, schedules, statement of financial affairs and other pleadings and

24  committed a substantial number of post-petition wrongful acts.  In the bankruptcy petition,

25  CHRISTOPHER CONDON, as CEO of TRAGO INTERNATIONAL, INC., states, under penalty

26  of perjury, that "[d]debtor has been domiciled or has had a residence, principal place of business,

27  or principal assets in this District for 180 days immediately preceding the date of this petition or

28  for a longer part of such 180 days than in any other District."  (Req.Jud.Not., ex. 55)  As found by

5

1 | Judge Riegel, this statement is blatantly false. Trago International has, from its inception, operated

2 | from offices in Orange County, California, and the only connection to Nevada was a registered

3 | agent office. (ex. 2 attached; Req.Jud.Not., ex. 51, 64)

4 |         (a)    Fraud on the Nevada Bankruptcy Court.

5 |         In addition to misrepresenting the headquarters location for the company in its Nevada

6 | bankruptcy petition and schedules,  the Nevada petition, schedules and Statement of Financial

7 | Affairs was filled with false and misleading information, failed to identify the legitimate creditors

8 | of the company, misrepresented the debts of the company, misrepresented the business locations of

9 | the company, misrepresented the financial affairs and location of company records, etc.  Despite

10 | being put on notice through attorney communications and the filing of a motion to dismiss, the

11 | Debtor never corrected the issues raised. (See, e.g. Req.Jud.Not., Ex. 59, Subexhibit 44)

12 |         While the Debtor, as of the date of the filing of this motion, has filed none of the required

13 | schedules, statement of financial affairs or list of equity security holders in this proceeding, the

14 | debtor's Nevada filings conclusively demonstrate the willingness of the Debtor, under the control

15 | of CONDON, to commit systematic bankruptcy fraud:

16 |         (1) the debtor failed to identify an IRS audit and failed to identify as creditors a number of

17 |         individuals and entities pursuing litigation against TRAGO INTERNATIONAL including:

18 |         (a) Campus Partners (landlord under an unexpired business lease); (b) Lovison, Kosty,

19 |         Desoto and Cardenas (plaintiffs in a pending Superior Court action against TRAGO

20 |         INTERNATIONAL in Los Angeles Superior Court); (c) Lovison, Kosty, Desoto, Cardenas

21 |         and Terrill (appellants in a Ninth Circuit appeal from a District Court's dismissal, on

22 |         standing and specificity grounds, of RICO claims brought against TRAGO

23 |         INTERNATIONAL; (d) Montgomery (plaintiff in an Orange County Superior Court action

24 |         against TRAGO INTERNATIONAL challenging ownership of the company's assets); (e)

25 |         Villaneda (former employee with a $12,000+ judgment against TRAGO

26 |         INTERNATIONAL in an Orange County Superior Court action); (f) TRAGO LP (a

27 |         predecessor company which allegedly entered into an Asset Assignment and Purchase

28 |

**Motion To Dismiss With Prejudice**                                     Case No.: BK-S-09-28095-LBR

Agreement under which TRAGO INTERNATIONAL was to pay $500,000 for the

TRAGO LP assets). (Req.Jud.Not., exs. 55, 59, 61, 62)

Schedule B - Personal Property – The Debtor identify only one U.S. patent and one U.S.

trademark (allegedly assigned by TRAGO LP in 2005);  The Debtor fails to identify that its

CEO, CONDON, used company funds to design and develop a bottle design and a

cap/stopper design and used company funds to pay for the prosecution of patents in his

individual name; CONDON subsequently licensed the designs to TRAGO

INTERNATIONAL and directed that the company pay him hundreds of thousands of

dollars; (Req.Jud.Not., exs. 40-42, 55 and 59, subexhibits. 41, 42)

Schedule D – Creditors Holding Secured Claims – While Richard Condon

(CHRISTOPHER CONDON's father and prior COO of TRAGO INTERNATIONAL) is

identified on the list of creditors as holding an unsecured $225,000 claim, he is listed on

this schedule as a secured creditor; of note, the unsecured portion of the claim is equal to

the total claim – making nothing secured. (Req.Jud.Not., ex. 55)

Schedule F - Creditors Holding Unsecured Nonpriority Claims – this form is incomplete

and again fails to identify any former employees owed wages/reimbursement, opposing

parties in litigation pending in California courts,  shareholders who have demanded a return

of their investment, marketing companies, distributors or other individuals/entities owed

money by TRAGO INTERNATIONAL. (Req.Jud.Not., exs. 3, 4, 8, 9, 10, 17, 18, 21, 55,

59, 60, 61, 62, 63, 69)

Schedule G – Executory Contracts and Unexpired Leases – In its initial and supplemental

filings, Condon identified none initially and only identified a few distributor relationships

and a distillery relationship in a subsequent filing; Missing from this both forms are the

following: (a) lease with Campus Partners for office space in Irvine, California which is

subject to litigation; (b) Condon's employment and license agreements identified in a

corporate resolution (Condon licensed the patents which properly belonged to Trago LP

and/or Trago International to Trago International and directed that the company pay him

hundreds of thousands of dollars in "license" fees)(See Req.Jud.Not., exs. 55 and 59,

**Motion To Dismiss With Prejudice**                    Case No.: BK-S-09-28095-LBR

subexhibits . 41 and 42); (c) contract with cap and bottle manufacturers, most distributors, etc.; (d) contract with storage company for company equipment; and (e) alleged contract for the purchase of assets from TRAGO LP (Req.Jud.Not., exs. 33, 55 and 59 [subexhibits 18, 42]).

Statement of Financial Affairs – According to the information included in the Statement of Affairs filed in the Nevada bankruptcy, there is no functioning company, no company records, no officers and directors and no ability to operate.  This document contains quite a few material misrepresentations including the following:

(3)(c) the debtor stated that no payments had been made to or for the          benefit of creditors who are or were insiders.   CONDON has always used company monies to fund his lifestyle and identifies no payments to himself. (See, e.g., Req.Jud.Not., ex. 2) Over the past year, the debtor has also paid attorneys who jointly represented Christopher Condon (and Richard Condon) and entities wholly owned by Christopher Condon – in addition to representing Trago International.

(4) Suits and administrative proceedings, executions, garnishments and attachments.

(a)  the debtor failed to identify a number of pending cases in which TRAGO INTERNATIONAL has substantial liability and/or a Court could determine that TRAGO INTERNATIONAL misappropriated or fraudulently conveyed its assets from another entity, TRAGO LP;   For example, the defendants recently won an appeal in an action entitled Condon/Trago International v. Montgomery and are entitled to an award of attorneys' fees and costs which could exceed $200,000 (Req.Jud.Not., exs. 30, 55);  The debtor failed to identify a number of other actions or provided incorrect information regarding the actions identified.  The debtor failed to identify a Delaware Court of Chancery action filed by Trago International shareholder Lois Battram in June, 2008 to obtain access to the company's financial records.  This action was reduced to a December, 2008 stipulated order that Trago International will provide Battram with audited financials

8

1    and access to the financial information used to prepare the financials.

2    Condon and Trago International never complied with the order.

3    (Req.Jud.Not., exs. 21, 31, 55)

4    (15)  <u>Prior Address of debtor</u>.  In an apparent attempt to avoid disclosing that this

5    action was filed in the wrong venue, the debtor stated "none" – thereby

6    claiming that the debtor had operated exclusively from a Las Vegas

7    corporate agent office during the previous three years.  As the Judge found

8    in granting the Nevada motion to dismiss, this statement was necessarily and

9    intentionally false as the Debtor had always operated from Orange County,

10   California.

11   (19) <u>Books, Records and Financial Statements</u>.

12   (b) the Debtor stated that no firms have prepared financial statements for the

13   debtor in the 2 years prior to the bankruptcy.  In August, 2009, the debtor

14   filed a declaration from CPA Gary Capata stating that he was the accountant

15   for the company.  During a September, 2009 deposition, Capata testified

16   that he prepared compilation financial statements. (Req.Jud.Not., exs. 55

17   and 59 [subexhibits 38, 39])  Capata prepared a profit and loss statement for

18   2008 which differs from the bankruptcy filing by over $2.5 million and was

19   likely used to solicit investment. (Req.Jud.Not., ex. 59 [subexhibits 38, 39])

20   (c) the Debtor stated that no firms or individuals have possession of the

21   books of account or records of the debtor and fails to explain its answer.

22   Essentially, this is a claim that the company does not exist and is completely

23   non-functional.  However, records do exist.  Some are in the possession of

24   accountant Capata and others are likely in the possession of CONDON or

25   RICHARD CONDON.

26   (d)  the Debtor stated that no financial statements were provided to any

27   financial institutions, creditors or other parties within the two years prior to

28

9

1    the bankruptcy filing.  This is blatantly false. (Req.Jud.Not., exs. 1, 2, 18,

2    21, 23, 55, 59 [subexhibits 38, 39], 60, 61, 62])

3    (21)    Current Partners, Officers, Directors and Shareholders.

4    (b) The Debtor claimed that the corporation had NO OFFICERS and that

5    NO SHAREHOLDERS OWN MORE THAN 5% OF THE VOTING

6    SECURITIES OF THE CORPORATION.  According to the bankruptcy

7    filings, CONDON is the CEO.  The TRAGO INTERNATIONAL website

8    identifies Paul Pegg as a COO.  In his declaration, CONDON claims to own

9    over 70% of the stock of the company. (Req.Jud.Not., exs. 32, 33, 55)

10    (23)    Withdrawals from a partnership or distributions by a corporation.

11    Christopher Condon, as the sole officer and director of Trago International,

12    claims to have received no distributions or compensation in the year prior to

13    filing bankruptcy.  Trago International is likely the only source of income

14    for Christopher Condon and the only means for him to obtain monies to

15    support his lifestyle – including a leased house in Orange County which

16    movants believe was leased for $7000 per month through February, 2009

17    and his current upscale apartment in Orange County. (See, e.g.,

18    Req.Jud.Not., ex. 2)

19    (b)  Post-Petition Misconduct by the Debtor During the Pendency of the Nevada

20    Bankruptcy Proceeding.

21    While the Nevada Chapter 11 bankruptcy proceeding was pending, the Debtor engaged in

22    substantial post-petition misconduct.

23    In the Nevada bankruptcy, the Debtor improperly used this bankruptcy to stay or seek to

24    stay all actions pending personally against CHRISTOHPER CONDON. (Req.Jud.Not., exs. 59

25    [pp. 6:23-7:7] and 70)    The Debtor's counsel has announced the Debtor's intention to seek to

26    extend the automatic stay to include all pending litigation involving the debtor and/or its principal

27    (Condon). (Lucal Decl. filed herewith)    In seeking to avoid the entry of a judgment in a pending

28    civil action against CONDON only, Debtor's current bankruptcy counsel, attorney Rawson, stated

**Motion To Dismiss With Prejudice**                    Case No.: BK-S-09-28095-LBR

to the California Superior Court that it was difficult to tell the difference between CONDON and the Debtor. Id.

While its Nevada Chapter 11 proceeding was pending, the Debtor filed a frivolous action for malicious prosecution against some of its victims on October 22, 2009. This filing was made without proper employment of counsel by the Court. (See Req.Jud.Not., exs. 17, 45; Schumacher Decl.)

During the Section 341 meeting in the Nevada bankruptcy proceeding, CONDON confessed to multiple additional violations of the bankruptcy code and rules. Specifically:

- Mr. Condon has authorized payment of a significant pre-petition debt without seeking or obtaining the approval of the Court. After the filing of the petition and immediately prior to its continued Section 341 meeting, the Debtor paid $50,000 against a $160,000 pre-petition debt owed to its Mexican distiller, Camarena. (See, Req.Jud.Not., ex. 51, at pp. 49:18-50:7; 65:12:24).

- The Debtor made a $10,000 payment to pre-petition creditor Young's Market Company, a distributor. Mr. Condon's testimony at first indicated that this was for a pre-petition account payable (see, Req.Jud.Not., ex. 51 at pp. 45:17-18, 46:11-12). As counsel for the U.S. Trustee and counsel for the movants continued to ask questions about unauthorized payments of pre-petition debt, however, Mr. Condon changed his story to account for the Young's Market payment as going to a "future marketing fund." (Id., pp. 66-67.)

- Mr. Condon has caused the company to incur post-petition indebtedness without seeking or obtaining the permission of the Court. Without court approval, the Debtor has borrowed funds from Paul Pegg, an insider, during the pendency of this case. (See, Req.Jud.Not., ex. 51, pp. 43:22-44:3). There is apparently a written loan agreement with Mr. Pegg, but it has not been submitted to the Court or shared with other parties in interest. (Id. at p. 63:12-21.)

- Mr. Condon has made post-petition payment to Debtor's bankruptcy professionals without seeking or obtaining court approval. On the date of the continued Section 341 meeting, the Debtor made an unauthorized post-petition payment to its bankruptcy counsel. (See, Req.Jud.Not., ex. 51, pp. 48:21-25; 66:9-12.)

**Motion To Dismiss With Prejudice**                    Case No.: BK-S-09-28095-LBR

1    • Mr. Condon has caused the Debtor to sell a significant portion of its assets post-petition

2    without seeking approval under Section 363 of the Code or otherwise. Mr. Condon

3    testified that the Debtor sold a 120-foot container of tequila immediately prior to the

4    continued Section 341 meeting (see, Req.Jud.Not., ex. 51, p. 46:4-9) and supplied a copy of

5    the sales order signed in Newport Beach, CA as part of the Exhibits to the Opposition.

6    This sale constituted a liquidation of up to 20% of the Debtor's product and was made at

7    significantly distressed prices. (See, Req.Jud.Not., ex. 68)

8    • Mr. Condon was belligerent and evasive when questioned at the 341 meeting by counsel

9    for the movants and at one point refused to answer a simple question regarding whether the

10    company retained copies of financial statements being shown to potential new investors in

11    the company. (See, Req.Jud.Not., ex. 51, pp. 59:8-64:11).

12    Despite being put on notice of blatantly false statements in the Debtor's petitions, schedules

13 and Statement of Financial Affairs, the Debtor never corrected these deficient and false documents.

14    **C.    Trago International Has Been Operated In Fraud Upon Its Shareholders and**

15 **Other Parties In Interest.**

16    In 2002, plaintiff DOUGLAS LOVISON and Frank Dux came up with the concept of

17 marketing a super-premium tequila in a unique bottle design and jointly designed the bottle. They

18 later met defendant CHRISTOPHER CONDON who represented that he had substantial corporate

19 experience, was well-connected, and had training in critical areas necessary to develop the entities

20 to move the project forward. CONDON further stated that he could help them obtain investment

21 because of his close connections with a large group of rich and famous individuals (e.g. Teddy

22 Turner, Jr. and Jack Kemp). LOVISON and Dux agreed to allow CONDON to participate in the

23 new venture and have substantial management responsibility. LOVISON and CONDON formed a

24 British Virgin Islands limited partnership for the venture, TRAGO LP, and formed a British Virgin

25 Islands corporation, FX HOLDINGS INTERNATIONAL, to be the general partner for TRAGO

26 LP. (Plaintiffs' Req.Jud.Not., filed herewith, ex. 3, (Dux Decl.) and ex. 60 [pp. 2:5-5:4 and exs. 1-

27 4])

28

**Motion To Dismiss With Prejudice**                    Case No.: BK-S-09-28095-LBR

1    In early 2004, LOVISON and a number of key members of the TRAGO LP management

2   team obtained evidence that CHRISTOPHER CONDON was a confidence man and a fraud who

3   was incompetent and was exposing the company to substantial liability.   In March, 2004,

4   LOVISON, KOSTY and Montgomery asked CONDON to resign due to concerns about his

5   fraudulent representations and inept conduct as a co-managing director of TRAGO LP's general

6   partner, FX HOLDINGS INTERNATIONAL.   CONDON refused to resign but insisted that he

7   remain as one of the managing directors of TRAGO LP's general partner.   Because TRAGO LP

8   could not obtain investment or conduct business without making disclosures about CONDON and

9   his background, LOVISON resigned as the co-managing director of FX HOLDINGS.

10   (Req.Jud.Not., exs. 60 [pp. 6:4-9:19 and subexhibits 1-19, 21] and 59 [subexs. 8-10)

11    CONDON then proceeded to embezzle/steal the assets of TRAGO LP for his own personal

12   benefit. (Req.Jud.Not., exs. 1, 2, 5 [para. 3], 8, 9, 10 [pp. 4:9-5:19], 15, 16 [pp. 2:14-4:16], 17, 19,

13   21, 23, 30, 40-42, 60[pp. 9:15-16:28 and subexs. 20-33], 59 [subexs. 1-3, 7, 12-14, 16, 20, 22-23,

14   26-27])   Between June, 2004 and November, 2004 and having essentially no contact with TRAGO

15   LP limited partners, CONDON obtained $150,000 in investment in TRAGO LP and spent

16   substantially all of this money on his personal expenses. (Req.Jud.Not., ex. 60[pp. 10:20-11:5 and

17   Subex. 20).

18    In October, 2004, CONDON formed TRAGO INTERNATIONAL, INC. to transfer the

19   assets of TRAGO LP.   With the transfer, CONDON increased his ownership in the TRAGO

20   venture by almost double over his ownership in TRAGO LP, tripled his salary over what he had

21   with TRAGO LP,  excluded 12 (of 34)  TRAGO LP limited partners from participating in TRAGO

22   INTERNATIONAL and deprived them of their investment; diluted the ownership interests of 17

23   TRAGO LP limited partners who were allowed to participate in TRAGO INTERNATIONAL,

24   fraudulently conveyed the TRAGO LP assets to defeat the claims of TRAGO LP creditors and

25   eliminated oversight so that he could embezzle investment and other monies from TRAGO

26   INTERNATIONAL. (Req.Jud.Not., exs. 5, 6, 8, 9, 10, 13, 15, 16, 19, 30, 59, 60)  CONDON then

27   operated TRAGO INTERNATIONAL in a systematically fraudulent and criminal manner.

28   (Req.Jud.Not., exs. 1-5, 10-12, 14, 16-18, 20-47 , 59, 60 [pp. 9:20-20:4 and subexs. 21-33])

**Motion To Dismiss With Prejudice**                    Case No.: BK-S-09-28095-LBR

1    CONDON has used much of the revenue and investment obtained by TRAGO

2    INTERNATIONAL for his own personal benefit and that of his family – without disclosure to

3    investors or shareholders. (Req.Jud.Not., exs. 2 (para. 7, 8, 9, 10, 11), 5, 10, 23, 40-42, 59, 60, 61,

4    62). Specifically, CONDON used monies generated from the misappropriated assets to: (1) pay

5    himself and his family exhorbitant salaries and to pay for substantially all of their personal

6    expenses; (2) pay for expensive personal items for CONDON (including Mercedes vehicles and a

7    $60k watch) and expensive vacations to Las Vegas or other destinations; (3) increase his

8    ownership interests in TRAGO INTERNATIONAL by having the corporation re-purchase stock

9    and subsequently re-issuing the stock to himself for no consideration (1,000,000 shares or almost

10   10% of outstanding stock); (4) obtain individual patents for designs developed by or for TRAGO

11   LP and/or TRAGO INTERNATIONAL (CONDON subsequently licensed the patents to TRAGO

12   INTERNATIONAL to obtain more personal income); (5) to form and fund other companies

13   wholly owned by CONDON and to provide support to those companies (e.g. receivership

14   defendants PULSE ENTERTAINMENT and RUVA INTERNATIONAL) and (6) directing that

15   TRAGO INTERNATIONAL pay attorneys to pursue CONDON's personal claims, to defend

16   CONDON against claims raised against him personally, to file frivolous litigation against

17   individuals challenging CONDON's fraudulent and criminal activities, and to threaten to sue or

18   take actions against others who cooperate with efforts to have CONDON removed from control of

19   TRAGO INTERNATIONAL. (Id.)

20       CONDON has induced investors to invest $8.4 million in TRAGO INTERNATIONAL

21   through blatant securities fraud. (Req.Jud.Not., exs 1-31, 40-44, 46-47, 59, 60, 61, 62)  The

22   securities fraud has taken many forms.  Specifically, CONDON has failed to disclose threatened

23   or pending litigation.   CONDON has blatantly misrepresented a number of other key facts

24   relating to: (1) his ownership interest in TRAGO INTERNATIONAL; (2) officers or employees of

25   the company; (3) ownership of the company's patent and trademark and how the company

26   obtained assets of TRAGO LP; (4) offers received to purchase the TRAGO brand; (5) how

27   investment monies were to be used and whether commissions were being paid for the referral of

28   the investor to the company; and (6) the existence of key contracts with distilleries and

**Motion To Dismiss With Prejudice**                    Case No.: BK-S-09-28095-LBR

1  distributors.    Several examples of the egregious fraud of CONDON and his co-conspirators

2  include: (1) prior to having a contract in place with any distillery, CONDON secretly would buy

3  two tequilas from a store (El Tesoro and El Chinaco), mix the tequilas and present the mix as the

4  unique TRAGO brand taste tested by an industry professional, Robert Plotkin; and (2) in late 2006

5  and prior to having sold any product, CONDON, with the assistance of MEDIANO, falsely

6  represented that TRAGO had a firm offer to purchase the brand for $87 million from Louis Vitton

7  Hennessey and used this alleged offer to justify a stock purchase price of $9 per share. (See, e.g.,

8  Req.Jud.Not., exs. 1, 2, 5, 10, 20, 21, 59, 60, 61, 62)    CONDON has engaged in systematic fraud

9  with distributors and wholesalers to get them to buy excessive inventory. (Req.Jud.Not., exs. 3, 4,

10  7, 29, 46, 47)    Investors of approximately $4 million have demanded their investment monies back

11  from TRAGO INTERNATIONAL.  (Req.Jud.Not., exs. 1, 12, 14, 17, 18, 20, 21, 61, 62, 69)

12          To cover up CONDON's fraud, embezzlement/theft and other criminal acts, CONDON and

13  his father, defendant RICHARD CONDON, exercise total control over TRAGO

14  INTERNATIONAL.   CHRISTOPHER CONDON is the only director, and no accountants have

15  ever reviewed the financial records of the company.    Despite requests from over a dozen

16  TRAGO INTERNATIONAL shareholders (including movant LOVISON) for competent, reliable

17  financial statements or for review of TRAGO INTERNATIONAL financial records, the

18  CONDONs have systematically denied access to TRAGO INTERNATIONAL financial records.

19  The sparse financial statements produced by CONDON were prepared by RICHARD CONDON,

20  with no substantial experience in accounting, and have NO credibility.   (See Req.Jud.Not., exs. 1,

21  2, 12, 14, 17, 18, 20, 21, 22, 23, 59, 60, 61, 62; See also ex. 59 [subexhibits 4-6])

22          CONDON has systematically used extortion, threats, coercion and other means to keep

23  anyone from challenging his fraudulent and criminal activities.  CONDON extorted LOVISON to

24  enter into a settlement agreement in February, 2005 by threatening to file a frivolous lawsuit

25  against LOVISON, his girlfriend, his financial advisor, his long-term attorney and friend, several

26  of his best friends and a couple of industry professionals involved with the TRAGO project.

27  CONDON further threatened to steal the TRAGO LP assets whether LOVISON agreed to the

28

**Motion To Dismiss With Prejudice**                    Case No.: BK-S-09-28095-LBR

1   settlement or not -- leaving LOVISON with nothing if he failed to sign.  (See, Req.Jud.Not., ex. 60

2   [pp. 10:23-14:3 and subexs. 21-25])

3       In November, 2006, CONDON directed that counsel file a meritless lawsuit against

4   TRAGO LP limited partners challenging his theft of the assets of TRAGO LP including Douglas

5   Lovison, George Kosty and Ty Montgomery.   The meritless lawsuit included a number of false

6   accusations and was circulated to a large number of CONDON's victims and key witnesses as

7   warning not to support efforts to stop CONDON's criminal and fraudulent activities.  Lovison,

8   Kosty and Montgomery recently won an appeal of a special motion to strike this meritless lawsuit

9   filed by CONDON/TRAGO INTERNATIONAL, are entitled to a judgment in their favor and are

10  entitled to an award of costs and attorneys' fees as a sanction. (See Req.Jud.Not., exs. 30, 59 and

11  60 [ pp. 15:1-16:28 and subexs. 28-31])

12      CONDON and his attorneys have also directly and indirectly threatened parties and

13  witnesses. (See Req.Jud.Not., exs. 1 (p. 8:20-23), 2, 5 (pp. 4:18-5:13, 7:8-8:6), 21 (pp. 5:8-6:22),

14  30, 46 (p. 3:6-9), 47 (p. 2:20-27); 59 [pp. 13:19-15:2 and exs. 29-33), 61 and 62.)   In May, 2009,

15  CONDON and TRAGO INTERNATIONAL, through a family law attorney named Larocca, filed

16  a meritless malicious prosecution lawsuit against Lovison and his attorney, Richard Lucal, in San

17  Diego County Superior Court.   Larocca then disseminated threats to key witnesses and TRAGO

18  INTERNATIONAL shareholders threatening to sue anyone who cooperated with efforts pending

19  in Los Angeles Superior Court to have a receiver appointed for TRAGO INTERNATIONAL.

20  Lucal and Lovison filed special motions to strike under California Code of Civil Procedure section

21  425.16 which were granted in November, 2009 -- resulting in the dismissal of this frivolous action

22  and an upcoming award of attorneys' fees/costs against CONDON and the debtor. (Req.Jud.Not.,

23  exs. 48 and 66)

24      As discussed above and while the Nevada bankruptcy was pending, CONDON and

25  TRAGO INTERNATIONAL filed another post-petition malicious prosecution action on

26  October 22, 2009 against their victims and victims' counsel which will, again, be subject to special

27  motions to strike. (Req.Jud.Not., exs. 45, 59 [pp. 6:24-7:7] and 52)   From public record and the

28  declarations of CONDON, it appears that the only business being conducted by TRAGO

**Motion To Dismiss With Prejudice**                     Case No.: BK-S-09-28095-LBR

1  INTERNATIONAL at this time is the pursuit of meritless lawsuits, the defense of meritorious

2  lawsuits and securities fraud to fund CONDON and TRAGO INTERNATIONAL's attorneys.

3  (Id.; Req.Jud.Not., exs. 2, 26, 46, 47, 55, 59, 60, 61 and 62)

4          In October, 2008, CONDON fired the remaining employees of TRAGO

5  INTERNATIONAL. (Req.Jud.Not., exs. 2 (para 6), 51, 56, 57, 63)   On October 20, 2008,

6  CONDON held a shareholder meeting and needed 5 security guards to control a crowd of 25

7  shareholders. (Req.Jud.Not., exs. 1 [paras 10-12], 18, 60 [pp. 17:24-20:20 and subex. 33] and 61);

8  CONDON has essentially shut the company down and has not paid the tequila distillery for over a

9  year. (Req.Jud.Not., ex. 2 [paras 5 and 7])

10         In August, 2009 and after a California Superior Court judge had announced that a receiver

11 would be appointed for TRAGO INTERNATIONAL once a bond amount had been determined,

12 CHRISTOPHER CONDON submitted a declaration stating that he had received a proposal from

13 an Orange County, California Company to obtain $20 million in investment, and to create and staff

14 facilities in California. (Req.Jud.Not., exs. 24, 25, 26, 28, and 59)   The proposal came from a

15 company, SSC Marketing, which was suspended in the State of California and not authorized to

16 conduct business. (Req.Jud.Not., exs. 25 and 59 [subexhibit 37])   CONDON's August, 2009

17 declaration and communications with third parties demonstrated that he was in the process of

18 raising the $20 million in investment. (Req.Jud.Not., exs. 24 and 26).

19         During the meeting of creditors, CONDON announced, during the 341 meeting, that his

20 plan of reorganization involved raising an additional $5 million in investment for this insolvent

21 company. (Req.Jud.Not., ex. 51)   There can be no doubt that CONDON intends to obtain this

22 investment through the use of securities fraud.

23 **D.**      **Trago International Has No Substantial Assets, No Substantial Revenue and Is**

24         **Likely Being Funded Through Continuing Securities Fraud.**

25         In the year 2009 and prior to the Nevada bankruptcy filing, TRAGO INTERNATIONAL

26 sold less than $20,000 in tequila. (Req.Jud.Not., exs. 7, 29, and 63)   During the pendency of the

27 Nevada bankruptcy, the Debtor liquidated, at fire-sale prices and without Court approval, up to

28 20% of its inventory for approximately $120,000 and used most of this money to make preferential

**Motion To Dismiss With Prejudice**                           Case No.: BK-S-09-28095-LBR

1 | payments to creditors without court approval. (Req.Jud.Not., exs. 51 and 68)  During 2009,

2 | CHRISTOPHER CONDON has likely funded the company and operated through the conduct of

3 | systematic securities fraud.  (Req.Jud.Not., exs. 1, 2, 24, 25, 26, 29, 46, 47 and 59)  Despite filing

4 | for Chapter 11 bankruptcy, it is clear that CHRISTOPHER CONDON will continue to fund his

5 | lifestyle and pending litigation (the company's only present business) through securities fraud. Id.

6 | As to the purported assets of the company, TRAGO INTERNATIONAL has some

7 | inventory in the U.S. – some of which is subject to federal excise taxes and which has a market

8 | value of less than $200,000 – at the prices which TRAGO recently sold substantial inventory.

9 | TRAGO INTERNATIONAL has no ownership right to inventory in Mexico as the distillery has

10 | put the company on a C.O.D. basis as to any existing stockpiles in Mexico.  (Req.Jud.Not., ex. 2)

11 | The tooling for the cap/stopper which is in the possession of HK Plastics is of no value absent a

12 | continuing business.  At the fire-sale prices which TRAGO INTERNATIONAL recently sold

13 | inventory, it is likely that the sum total of tequila in the U.S. and Mexico could generate much less

14 | than $500,000 – after payment of federal excise taxes, production costs and sales commissions.

15 | As to intellectual property, TRAGO INTERNATIONAL failed to disclose that

16 | CHRISTOPHER CONDON used company funds to obtain a patent in his own individual name for

17 | the bottle being used by TRAGO INTERNATIONAL (designed for TRAGO LP) and to apply for

18 | a patent in his own name for the cap/stopper design created for and used by the company.

19 | (Req.Jud.Not., exs. 40, 42, 59 and 60)   Not only did CONDON use company funds to pay for the

20 | design work performed on the bottle and cap/stopper and for the patent applications, CONDON

21 | has directed that TRAGO INTERNATIONAL pay CONDON hundreds of thousands of dollars in

22 | licensing fees. (Req.Jud.Not., ex. 59 [subexhibits 41, 42])

23 | The primary value left in TRAGO INTERNATIONAL is the TRAGO brand.  The

24 | legitimate creditors and victims of the company could potentially receive some value if the brand

25 | can be saved and critical intellectual property transferred from CONDON back to the company.

26 | However, efforts to save the brand will necessarily require litigation by the Debtor to recover

27 | patents improperly issued in CONDON's individual name.  The Debtor could also obtain some

28 | value by recovering preferential payments made by CONDON or monies misappropriated by

**Motion To Dismiss With Prejudice**                    Case No.: BK-S-09-28095-LBR

1  CONDON, RICHARD CONDON or CONDON's agents/attorneys.   However, with CONDON as

2  the debtor in possession, the Debtor will not make any effort to recover assets misappropriated by

3  CONDON or his agents/attorneys.

4  **II.    ARGUMENT**

5       Having ceased substantial operations for nearly a year and having depleted substantially all

6  assets other than its contested intellectual property rights, the Debtor found itself nearing the end

7  of the road in ongoing litigation taking place in its home state of California.   A state court in

8  California had announced its decision to appoint a receiver for the Debtor's few remaining assets.

9  Mere hours before entry of a written order appointing the California receiver, the Debtor

10 frivolously filed a chapter 11 petition in Las Vegas, Nevada – a location where it has never

11 maintained a functioning office or any assets.    In response to a motion to dismiss for cause and

12 for improper venue, the Nevada bankruptcy judge rejected the Debtor's frivolous claims of

13 appropriate venue, found that the company could not be reorganized and found that abstention

14 would be proper to allow the matter to proceed forward in the receivership action.

15      Despite the Nevada Court's finding that the Debtor cannot be reorganized, the Debtor

16 immediately filed a Chapter 11 proceeding in this Court.    While the Debtor has failed to file all

17 required schedules, a list of equity security holders and a statement of financial affairs, the Debtor

18 did file a motion to extend the stay for the obvious reason of protecting CONDON and his co-

19 conspirators from civil liability in a pending California Superior Court action.   The filing of this

20 action demonstrates that CONDON, as the debtor, in possession will dissipate and waste the assets

21 of the estate to protect himself and his co-conspirators from liability (including Mediano), and this

22 is CONDON's primary goal.

23      CONDON has further demonstrated, with the Nevada bankruptcy filing, that he has no

24 qualms with regard to filing fraudulent bankruptcy pleadings and perpetrating fraud on this and

25 other Courts.

26 **B.    The Case Should Clearly Be Dismissed For Cause Under §1112(b).**

27      11 U.S.C. §1112(b) provides, in pertinent part, as follows: "on request of a party in interest,

28 and after notice and a hearing, . . . the court shall convert a case under this chapter to a case under

19

**Motion To Dismiss With Prejudice**                          Case No.: BK-S-09-28095-LBR

1 | chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the

2 | estate, if the movant establishes cause." **THE NEVADA BANKRUPTCY JUDGE ON**

3 | **DECEMBER 16, 2009, HAVING REVIEWED VOLUMINOUS PLEADINGS AND**

4 | **HAVING CONSIDERING THE MERITLESS ARGUMENTS PUT FORTH BY THE**

5 | **DEBTOR, ALREADY DETERMINED THAT THERE IS NO POSSIBILITY THAT THE**

6 | **DEBTOR CAN REORGANIZE AND THAT A BANKRUPTCY COURT SHOULD**

7 | **ABSTAIN – AS THE PROPER PLACE TO RESOLVE ISSUES OF THE CREDITORS IS**

8 | **THE LOS ANGELES SUPERIOR COURT RECEIVERSHIP ACTION**. The Nevada

9 | bankruptcy judge's specific findings of fact also demonstrate that the Debtor committed fraud on

10 | the bankruptcy court by claiming that its center of operations was in Nevada, etc. The collateral

11 | estoppel finding of the Nevada bankruptcy judge, alone, supports a dismissal of this action (on

12 | abstention grounds), a conversion to a Chapter 7 proceeding, or the appointment of a Chapter 11

13 | trustee. Conversion or appointment of a Chapter 11 trustee is also supported by the overwhelming

14 | evidence of for substantial or continuing loss to or diminution of the estate, total absence of a

15 | possible rehabilitation, unauthorized use of cash collateral, prior acts of post-petition bankruptcy

16 | misconduct, dishonesty, gross mismanagement, and fraud. (See declarations and other evidence

17 | attached to the concurrently filed Request for Judicial Notice).

18 | Further and despite the Court's issuance of deficiency orders, the Debtor has failed to

19 | timely file Schedules A, B, D, E, F, G and H, a list of equity security holders and a Statement of

20 | Financial Affairs. Conversion to a Chapter 7 or appointment of a Chapter 11 Trustee is supported

21 | by an unexcused failure to comply with the orders of this Court or the FRBP.

22 | As discussed in <u>In re Marsch</u>, 36 F.3d 825, 828 (9th Cir. 1994), "Although section 1112(b)

23 | does not explicitly require that cases be filed in 'good faith,' courts have overwhelmingly held that

24 | a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal." The court's

25 | determination regarding good faith should be based on an amalgam of factors rather than any one

26 | specific fact. <u>Id</u>. "The test is whether a debtor is attempting to unreasonably deter and harass

27 | creditors or attempting to affect a speedy, efficient reorganization on a feasible basis." <u>Id</u>.

28

Many courts employ a multi-factor analysis to assist in weighing the good faith of a chapter 11 debtor, looking to several recurring attributes of bad faith bankruptcy filings. Pulling together multiple circuit opinions, the court in In re Chu, 253 B.R. 92, 95 (Bankr. S.D. Cal. 2000) applied an eight factor test to analyze the question of bad faith filing. The Chu factors and their application to the facts in this case are as follows:

1) **the debtor has one asset** – This is approximately the case here. The Debtor may have some tequila inventory in Mexico and elsewhere, but is apparently unable to access the bulk of it due to C.O.D. limitations imposed by the distillery. The Debtor's only real remaining asset is intellectual property related to the Trago brand and bottle design. As detailed in the concurrently filed Declarations, this asset is the only thing of substantial value in which the Debtor has an interest and it has been previously misappropriated by the Debtor's principal. Obviously, the Debtor's principal, CONDON, as a debtor in possession will not make any effort to recover the intellectual property for the Estate. Aside from delay and frustration of creditors, the only purpose of this filing is for CONDON to maintain control of these intellectual property assets.

2) **The debtor engaged in improper pre-petition conduct** – This factor is heavily applicable in this case. The Debtor and its principals have engaged in widespread fraud and misrepresentation in the sale of securities in the Debtor entity. Having fraudulently transferred intellectual property and related assets to the Debtor from the predecessor entity, Trago, L.P, the Debtor's principal has further misappropriated those assets for his personal benefit. The Declarations filed concurrently herewith also detail extensive inappropriate use of company funds for Condon's personal benefit and other abuses. The Debtor has stalled or evaded myriad efforts by aggrieved investors to examine its financial records. Based on an overwhelming record of fraud and abuse, a California court has determined that a receiver should be appointed for the entity. **In addition, the Debtor engaged in substantial post-petition misconduct with regard to the Nevada Bankruptcy**

21

proceeding demonstrating unequivocally that the interests of the creditors are
not protected by allowing this action to go forward as a Debtor in possession.

3) **The debtor can identify only a few unsecured creditors** – This factor is not
applicable here.   As discussed above, however, the Debtor has neglected to
schedule several important unsecured creditors and shareholders who have
demanded a return of their funds, thereby denying them formal notice of these
proceedings.

4) **The debtor's property has been posted for foreclosure, and the debtor has been
unsuccessful in defending against the foreclosure in state court.** – Although this
factor is not literally applicable, this case was intended to forestall the Debtor's loss
of control over its remaining assets in the California receivership action.
Essentially, the Debtor's principal has invoked the automatic stay to avoid a loss of
control over the few remaining assets.

5) **The debtor and a single creditor proceeded to a standstill in state court
litigation, and the debtor has lost or has been required to post a bond which it
cannot afford.** – Although there is more than one aggrieved party seeking relief
against the Debtor and Condon in the California courts, the Debtor and its principal
have plainly reached the end of the road in their ongoing battle against aggrieved
shareholders and others.   The Debtor has lost the receivership action and filed this
case hours before the appointment of a receiver.   After appeal, Condon and the
Debtor have also lost a frivolous retaliatory lawsuit filed against their litigation
creditors and, absent the automatic stay, would be required to pay large attorney's
fees and costs.   This case is simply a gambit to forestall the inevitable dispensation
of justice in through the California court system.

6) **The filing of the petition effectively allows the Debtor to evade court orders.** –
Evasion of court orders, including orders for appointment of a receiver, are the
precipitating cause and sole discernable reason for these proceedings.

22

**Motion To Dismiss With Prejudice**                    Case No.: BK-S-09-28095-LBR

**7) The Debtor has no ongoing business or employees.** – As discussed above and in the supporting Declarations, the Debtor ceased substantially all operations about a year ago. Its 2009 sales were a mere $16,000 – prior to its unauthorized dumping of inventory at fire-sale prices during the pendency of the Nevada bankruptcy proceeding. There is no enterprise before the Court which could ostensibly be preserved or reorganized for the benefit of any community of stakeholders. This filing is nothing but an attempt for Debtor's current officer to maintain a modicum of personal control over its tequila brand name and related intellectual property.

**8) The lack of possibility of reorganization.** – As the Nevada Bankruptcy judge found after review of extensive pleadings, a proper reorganization is quite impossible, as there is no functioning business to reorganize. (See, e.g., Req.Jud.Not., exs. 56 and 57)  The Debtor's Trago brand name and bottle design may have some value, but they are useless except in the context of a functioning, legally compliant, liquor business than can establish goodwill in the industry. Years of mismanagement, fraud, and neglect have left the Debtor with no operations and no business goodwill.  As revealed in the California receivership action and as detailed in the supporting Declarations, Condon's only hope for arranging additional capital was a plan to sell yet more securities in this insolvent entity through the use of fraudulent financial statements.  As discussed in the Motion and as shown in its Exhibits, the Debtor has no substantial operations and little remaining business goodwill.  At the Nevada Section 341 meeting, CONDON's comments about a potential reorganization wandered into the realm of fantasy.  Apparently, Condon expects to "raise equity of another 5 million," at which time he apparently plans to hire away employees of an outside marketing firm.  (See, Req.Jud.Not., ex. 51, at p. 29:22-24).  The unauthorized post-petition loan from Mr. Pegg has supposedly helped to "resurrect" the company (id. at 43:14-15), yet the Debtor apparently has less than $50,000 in cash, despite the unauthorized loan from Mr. Pegg and the unauthorized liquidation of a fifth of its

23

1  inventory. (Id. at 67:25-68:6; see Req.Jud.Not. exs. 49 and 50 re: lack of resources

2  to make any alleged loan) Mr. Condon spoke of "plans to raise new capital through

3  equity or debt" (id. at 22:11-12), but turned vague and then pointedly evasive when

4  asked if the company had shown a private placement memorandum to its potential

5  investors, how many investors had been contacted, and whether the company kept

6  copies of any financials that it was showing potential investors. (Id. at 57:14-

7  63:11).  As to the Pegg loan, Pegg appears to be deeply insolvent. (See, Req. Jud.

8  Not., exs. 49 and 50)  Of note, in March, 2009, the Debtor provided a third party

9  with a falsified financial statement, prepared by its certified public accountant,

10  which purported to report a profit from 2008 of over $200,000 when the company

11  financial records show a loss of over $2 million. (See Req.Jud.Not., ex. 59,

12  subexhibit 39)

13      With few assets and almost no continuing operations, the Debtor cannot reasonably obtain

14  significant outside investment from any person who is given proper disclosure regarding its assets,

15  liabilities, and financial prospects. Recently, the Debtor's shareholders have been contacted by the

16  Enforcement Division of the California Department of Corporations regarding the State of

17  California's "inquiry regarding the investment activities of Christopher Condon, Michael Mediano,

18  and Trago International, Inc." (See, Req.Jud.Not., ex. 67 and subexhibit 1 thereto.)   CONDON

19  and the debtor are not only subject to an IRS audit but are being investigated by the IRS Criminal

20  Investigative Division.  So long as CONDON remains in control of the Debtor through these

21  proceedings, the public bears a significant risk that he will continue his past practice of funding the

22  Trago scheme through the use of unlicensed broker-dealers, fraudulent financial statements, and

23  other violations of the state and federal securities laws.

24      In addition to commonly-cited factors like those applied in the Chu case, courts frequently

25  analyze circumstances bearing on the Debtor's apparent purposes and motivations for the filing.

26  When, as in this case, the Debtor's apparent motivation is to use the automatic stay as a litigation

27  tactic and a means to shift away from an unfriendly forum, courts will find the filing to be in bad

28  faith. See, e.g., In re St. Paul Self Storage Limited Partnership, 185 B.R. 580, 583 (9th Cir. B.A.P.

**Motion To Dismiss With Prejudice**                    Case No.: BK-S-09-28095-LBR