

1  1995) (upholding dismissal where the "Debtor's purpose in filing its petition was not to effectuate

2  a reorganization of its business, but was a litigation tactic. . . . [the] Debtor's intent [was] to use the

3  bankruptcy code as a means to escape to a forum which it perceived to be more friendly"). In re

4  Silberkraus, 253 B.R. 890, 905 (Bankr. C.D. Cal. 2000) ("it constitutes bad faith to file a

5  bankruptcy to impede, delay, forum shop, or obtain a tactical advantage regarding litigation

6  ongoing in a nonbankruptcy forum."); In re Detienne Associates Limited Partnership, 342 B.R.

7  318, 326 (Bankr. D. Mont. 2006) (dismissal appropriate when "the petitioner's real motivation is

8  to abuse the reorganization process and to cause hardship or delay to creditors by resort to the

9  Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or

10  ability to reorganize his financial activities.").

11  Finally, the Debtor's conduct in preparing and filing its petition, schedules, statements, and

12  other documents can be an important factor in determining a filing to be in bad faith. While the

13  Debtor has ignored the orders of this Court and not filed required schedules, its filings in Nevada

14  bankruptcy court were rife with major material omissions and false statements regarding its

15  creditors, shareholders, offices, operations, and other matters. Furthermore, the Debtor committed

16  major acts of post-petition misconduct in the Nevada bankruptcy case. As one court explained,

17  "An important factor in determining the existence of bad faith is whether the Debtors have

18  misrepresented material facts. . . The finding of bad faith may rest on such nondisclosure or

19  misrepresentation and even subsequent amendments do not vitiate bad faith in failing to disclose

20  relevant facts." In re Rognstad, 121 B.R. 45, 50 (Bankr. D. Haw. 1990).

21  As documented in 11 U.S.C. section 1112(b)(1) and absent unusual circumstances, the

22  Court "shall" convert or dismiss the case, whichever is in the best interests of creditors and the

23  estate. Unusual circumstances do not exist in this case. The evidence of "cause" submitted with

24  this motion is overwhelming and undisputable.

25  **III.    CONCLUSION**

26  The primary purpose of bankruptcy "is to relieve the honest debtor from the weight of

27  oppressive indebtedness, and permit him to start afresh free from the obligations and

28  responsibilities consequent upon business misfortunes." Rognstad, 121 B.R. at 50. Allowing this

**Motion To Dismiss With Prejudice**                           Case No.: BK-S-09-28095-LBR

1 | case to proceed will do nothing to serve the purposes of the Code.    As the Nevada judge found,

2 | the Los Angeles receivership action is the proper place to sort out the claims of the creditors of the

3 | Debtor -- a company which cannot be reorganized.    Abstention or dismissal, with prejudice, is an

4 | appropriate remedy.    If the Court has concerns about a dismissal with prejudice, perhaps, it can

5 | consider the option of dismissing the action, with prejudice, for a limited period of time to allow

6 | the receivership to avoid fraudulent transfers and take necessary action against CONDON and

7 | other improper recipients of the Debtor's assets.

8 |         In the alternative to a dismissal, the movants respectfully request that this action be

9 | converted to a Chapter 7 liquidation or that a Chapter 11 Trustee be appointed.

10 |         RESPECTFULLLY SUBMITTED this 5th day of January, 2010.

11 |                                          LAW OFFICES OF RICHARD A. LUCAL

14 |                                          Respectfully submitted,

15 |                                          Richard A. Lucal (SBN 143372)

16 |                                          Attorney for movants DOUGLAS LOVISON

17 |                                          And GEORGE KOSTY

**Motion To Dismiss With Prejudice**                    Case No.: BK-S-09-28095-LBR

### DECLARATION OF RICHARD A. LUCAL IN SUPPORT

I, RICHARD A. LUCAL, do hereby declare:

1.    I am a  licensed California attorney authorized to practice law in the Courts of the State of California and before the U.S. District Court for the Central District of California.   I am the attorney of record for movants DOUGLAS LOVISON and GEORGE KOSTY in this bankruptcy proceeding.  I am also the attorney of record for defendant DOUGLAS LOVISON in an action filed by CHRISTOPHER CONDON and TRAGO INTERNATIONAL in December, 2006 entitled CONDON and TRAGO INTERNATIONAL v. MONTGOMERY, et.al., case number YC054317, and have represented LOVISON in that action and the related appeal since the inception of the lawsuit.    I was also the attorney of record for LOVISON in an Orange County Superior Court case filed against CHRISTOPHER CONDON, TRAGO INTERNATIONAL and other named defendants in December, 2006 and which was dismissed, without prejudice, in May, 2008 to pursue other relief collectively with other victims of CHRISTOPHER CONDON and TRAGO INTERNATIONAL.   I am the attorney of record in a case on appeal to the United States Court of Appeals for the Ninth Circuit, following the District Court's dismissal of  RICO claims (on standing grounds) brought by TOMMY DESOTO, ANTOINETTE CARDENAS, GEORGE KOSTY against TRAGO INTERNATIONAL, CHRISTOPHER CONDON (CEO of TRAGO INTERNATIONAL) and other defendants in the United States District Court for the Central District of California entitled *Desoto et al v. Condon, et.al.*, case number SACV08-514 AHS.  I am the attorney of record for LOVISON, Tommy Desoto, George Kosty and Antoinette Cardenas in a Los Angeles Superior Court case filed in December, 2008 against CHRISTOPHER CONDON, TRAGO INTERNATIONAL and other named defendants, case number YC058784.  I was also the attorney of record for LOVISON and George Kosty in a Chapter 11 bankruptcy proceeding filed by TRAGO INTERNATIONAL and which was dismissed, for cause, by the

**Motion To Dismiss With Prejudice**                              Case No.: BK-S-09-28095-LBR

1   Court on December 18, 2009 in response to a motion filed by my office and my co-counsel.  I have

2   personal knowledge of the information contained in this declaration and could provide competent

3   testimony at a hearing or trial.

4       2.      Much of the testimony that I have to give in support of this motion is contained in

5   declarations filed in the TRAGO INTERNATIONAL Chapter 11 proceeding which was recently

6   dismissed and are attached to the concurrently filed Request for Judicial Notice as Exhibits 59 and

7   66.

8       3.      As stated in my earlier declarations, TRAGO INTERNATIONAL filed for Chapter

9   11 protection in the State of Nevada on September 28, 2009 -- one day before a Los Angeles

10  Superior Court judge was to appoint a receiver for TRAGO INTERNATIONAL.   The California

11  Superior Court judge had on two prior occasions confirmed that a receiver was to be appointed and

12  that the only issues to be resolved on September 29, 2009 were the name of the TRAGO

13  INTERNATIONAL receiver, the amount of the bond and the scope of the receiver's duties.

14      4.      My co-counsel, Joe Lexague, filed a motion to dismiss the Nevada bankruptcy

15  proceeding based on improper venue and cause.  I appeared at the December 16, 2009 hearing on

16  the motion.  Attached as Exhibit 1 is a copy of the order issued by the Court on December 18,

17  2009 dismissing the case for cause.  Attached as Exhibit 2 is a transcript of the hearing on

18  December 16, 2009.  During the hearing and as shown in the transcript, the Court rejected the

19  arguments of the Debtor on venue and other issues, found no possibility of reorganization and

20  found that the Los Angeles Superior Court receivership proceeding was the proper place to resolve

21  the creditor's claims.  Exhibits 1-67 attached to the concurrently-filed Request for Judicial Notice

22  were submitted to the Court either as original filings or as attachments to requests for judicial

23  notice and were available to the Court for review prior to the hearing on December 16, 2009.

24      5.      After the hearing, I learned that TRAGO INTERNATIONAL had filed this Chapter

25  11 proceeding – despite the Nevada judge's finding of no possibility of a reorganization.  I

**Motion To Dismiss With Prejudice**                    Case No.: BK-S-09-28095-LBR

1    contacted the Debtor's counsel via phone, email and correspondence and informed him of the

2    Nevada judge's findings.

3        6.    I participated in a hearing on December 29, 2009 in Los Angeles Superior Court

4    case number YC054317 entitled <u>Condon and Trago International v. Montgomery et.al.</u>   My

5    client, LOVISON, had recently prevailed on an appeal of a special motion to strike and is entitled

6    to have judgment entered in his favor against CHRISTOPHER CONDON and TRAGO

7    INTERNATIONAL with an award of his attorneys' fees and costs.   During the hearing, the

8
9    Debtor's bankruptcy counsel, Mr. Rawson, sought to prevent a judgment from being entered

10   against CHRISTOPHER CONDON alone. Mr. Rawson stated to the Court that it was difficult to

11   distinguish between the Debtor and CHRISTOPHER CONDON.  Mr. Rawson further stated that

12   the Debtor intended to file a motion to have the automatic stay apply to this case and all other

13   litigation involving the Debtor and its principal. From my review of the bankruptcy file, it appears

14   that a motion was filed on December 29, 2009 but it is confusing as to whether the Debtor seeks

15
16   relief with regard to any action other than the Los Angeles Superior Court receivership action.

17       7.    I am aware of certain investigations being conducted by both the Internal Revenue

18   Service as to the Debtor and its principal (Christopher Condon) and by the California Department

19   of Corporations.   I have personally talked with personnel representing both entities.  I have also

20   learned that the Internal Revenue Service has instituted an investigation by its Criminal

21   Investigative Division and have met with a representative of that division.   Based on my

22   communications the California Department of Corporations, this entity has been provided with

23   substantial information regarding Condon and TRAGO INTERNATIONAL and has received

24   complaints from a number of investors. I was informed by the California Department of

25   Corporations in or about May or June, 2009 that it was conducting a formal investigation of

26
27   TRAGO INTERNATIONAL.

28

29

**Motion To Dismiss With Prejudice**                    Case No.: BK-S-09-28095-LBR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct, and that this Declaration is made and dated this 30th day of

January 5, 2010 at Vista, California.

_____

Richard Lucal

**Motion To Dismiss With Prejudice**                    Case No.: BK-S-09-28095-LBR

# EXHIBIT 1

Case 8:09-bk-24166-TA    Doc 17-1    Filed 01/07/10    Entered 01/14/10 11:16:05    Desc
Part 2 of 2    Page 8 of 30
Case 09-28095-lbr    Doc 94    Entered 12/18/09 09:55:48    Page 1 of 1

**Entered on Docket
December 18, 2009**

_____
Hon. Linda B. Riegle
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:

**TRAGO INTERNATIONAL, INC.**

                                   Debtor(s).

CASE NO:  09-28095 LBR

Chapter 11

Date: December 16, 2009

Time:  1:30 PM

## ORDER DISMISSING CASE

Based upon the findings of fact and conclusions of law entered on the record at hearing conducted on the date and time set forth above, pursuant to 11 U.S.C. § 1112 and in accordance with Fed. R. Bankr. P. 9014 and 7052,

**IT IS ORDERED** that this case is dismissed without prejudice.

### ###

# EXHIBIT 2

1

1       UNITED STATES BANKRUPTCY COURT

2          DISTRICT OF NEVADA

3           LAS VEGAS, NEVADA

4    In re:  TRAGO INTERNATIONAL,      )  E-Filed:  12/30/09
         INC.,                         )
5                                      )
            Debtor.                    )  Case No.
6                                      )  BK-S-09-28095-LBR
     _____   )  Chapter 11
7

8

9

10

11           TRANSCRIPT OF PROCEEDINGS
                      OF
12   STATUS HEARING RE: CHAPTER 11 VOLUNTARY PETITION, NO. 48
                      AND
13          MOTION TO DISMISS CASE
     FOR IMPROPER VENUE AND CAUSE, NO. 41
14               VOLUME 1
     BEFORE THE HONORABLE LINDA B. RIEGLE
15      UNITED STATES BANKRUPTCY JUDGE

16       Wednesday, December 16, 2009

17            1:30 p.m.

18

19

20

21

22

23   Court Recorder:      Helen C. Smith

24

25   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

2

```
 1    APPEARANCES:

 2    For George Kosty          JOHN J. LAXAGUE, ESQ.
      and Douglas Lovison:      Cane Clark, LLP
 3                              3273 East Warm Springs Road
                                Las Vegas, Nevada 89101
 4
                                RICHARD A. LUCAL, ESQ.
 5                              Richard A. Lucal, APLC
                                969 Vale Terrace Drive
 6                              Suite E
                                Vista, California 92084
 7
      For the Debtor:          YVETTE R. FREEDMAN, ESQ.
 8                              John Peter Lee, Ltd.
                                830 Las Vegas Boulevard South
 9                              Las Vegas, Nevada 89101

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Court convened at 02:09:53 p.m.)

2               THE COURT:  Trago.

3          (Colloquy not on the record.)

4               MR. LAXAGUE:  Good afternoon, your Honor.

5     Joe Laxague on behalf of the movants, George Kosty and

6     Douglas Lovison.

7               MR. LUCAL:  Richard Lucal, co-counsel for the

8     movants, Lovison and Kosty.

9               THE COURT:  Okay.

10              THE COURT RECORDER:  Will you spell your last name

11    for the record, please?

12              MR. LUCAL:  L-u-c-a-l.

13              MS. FREEDMAN:  Good afternoon, your Honor.

14    Yvette Freedman on behalf of the debtor.

15              THE COURT:  Okay.  Before we start -- you can stay

16    where you are -- let me just finish up my other 1:30s.  You can

17    certainly be seated.  Let me just finish my 1:30s.

18         (Thereupon, the case was trailed at 02:10:29 p.m.)

19         (Court reconvened at 02:34:08 p.m.)

20              THE COURT:  All right.  Now Trago.

21         Now, first of all, Ms. Freedman, you still have not been

22    employed as counsel.

23              MS. FREEDMAN:  I understand, your Honor.  And based

24    on what happens today, I would be getting in an application on

25    a shortened time.

4

1            THE COURT:  But if you're not authorized to represent

2    the debtor -- we don't even know what the connections are.

3    Doesn't your firm represent Mr. Condon personally?

4            MS. FREEDMAN:  No.

5            THE COURT:  It doesn't.

6            MS. FREEDMAN:  No, it doesn't.

7            THE COURT:  Okay.

8            MS. FREEDMAN:  No.  It just represents the debtor in

9    this --

10           THE COURT:  So why haven't you filed --

11           MS. FREEDMAN:  -- Chapter 11 proceeding.

12           THE COURT:  -- an application before now?

13           MS. FREEDMAN:  I believe that was an oversight within

14   our office.  I know we filed a motion, and we appeared here I

15   believe --

16           THE COURT:  Well --

17           MS. FREEDMAN:  -- a week or --

18           THE COURT:  -- but it was totally wrong.  I mean,

19   you're not ordinary-course professional, and you specifically

20   asked not to have to disclose your connections or do a

21   retention application.

22           MS. FREEDMAN:  I don't believe that we specifically

23   asked not to disclose --

24           THE COURT:  Well, it says --

25           MS. FREEDMAN:  -- that information.

1        THE COURT:  -- not to do a retention application.

2        MS. FREEDMAN:  I can do a retention application.

3        THE COURT:  Well, I'll let you --

4        MS. FREEDMAN:  That's what we're planning --

5        THE COURT:  -- go ahead.

6        MS. FREEDMAN:  -- to do.

7        THE COURT:  All right.  The motion, Mr. Laxague.

8        MR. LAXAGUE:  Your Honor, we've moved to dismiss this

9    case for two separate but we think related reasons, the first

10   being improper venue and the second being cause under 1112(b).

11       The first ground, venue, I think is pretty clear, pretty

12   easy, and pretty simple to address.  We're looking at domicile

13   or principal place of business in the 180 days before filing.

14       This debtor's a Delaware corporation.  Its principal and

15   only place of business is and always has been Orange County,

16   California.  It has no assets located in Nevada.

17       It's sole officer, Mr. Condon, resides in California.  He

18   controls and directs the company's remaining business from

19   there both prepetition and continuing today, and we've got

20   evidence on this submitted with the motion.  A new COO that was

21   reportedly hired in the summer also resides in Orange County,

22   California.

23       The company's never had a functioning office or any

24   operations in this district.  The purported address for the

25   company in Nevada is simply the address of a resident-agent

1    service over near Tropicana and Eastern.  Apparently, they have

2    mail forwarded from there, but it's not an office of the

3    company.

4         In the opposition, they've given absolutely no evidence

5    whatsoever supporting Nevada venue.  They simply insist in

6    their opposition papers that Nevada is a nerve center based

7    under the nerve-center test.

8         I'm not sure how they make that assertion.  Essentially,

9    they're saying the rental of an agency mail drop and hiring a

10   Nevada bankruptcy lawyer makes Nevada the nerve center.  Of

11   course, that's not sufficient.

12        The nerve center deals with where the officers who make

13   executive decisions for the debtor are located, and that's

14   Orange County, California.

15        If it's sufficient to simply rent a mail drop in Nevada

16   and hire a Nevada Chapter 11 lawyer and then have Nevada venue,

17   essentially, the venue statute has no meaning.

18        I know venue can be flexible in bankruptcy, but this one

19   isn't even close, your Honor.  This company has no connection

20   to Nevada.

21        We're asking not that it be transferred over to the

22   Central District, but that this case, in fact, be dismissed,

23   and the reason we're asking for dismissal rather than venue

24   transfer is we think this is part and parcel of an ongoing

25   pattern of bad faith.

1      We put forward with the motion a massive record of fraud

2  and self-dealing by this debtor and its principals.  This was

3  the evidence that was adduced in a California receivership

4  action, your Honor.

5      And on the eve of the formal entry of a written order

6  appointing a receiver based on that evidence, this case was

7  filed.

8      In their opposition, the debtor has not countered with any

9  evidence of its own other than a copy of a declaration made by

10 Mr. Condon in its losing effort to fight off appointment of a

11 receiver on the grounds of fraud and self-dealing over in

12 California.

13     The postpetition misconduct by this debtor I think is

14 pretty much beyond the pale.  As we learned at the 341 meeting,

15 the debtor has accepted an unauthorized loan postpetition.  The

16 debtor has made a substantial unauthorized payment of a

17 prepetition debt postpetition.

18     The debtor's representative confessed to an unauthorized

19 payment of attorneys fees supposedly made on the date of the

20 341 meeting.  The debtor has without authority retained

21 California counsel to continue some of these litigations.

22     The debtor, you know, has had minimal operations for a

23 year and then, suddenly, postpetition without Court approval

24 makes a sale of a substantial portion of its inventory and sold

25 that inventory at what we believe are fire-sale prices, and we

1    have evidence on this submitted with the motion.

2         In short, your Honor, we believe that this case is simply

3    a ruse to avoid the receivership action and to keep Mr. Condon

4    in control at least a little bit longer.

5         This debtor has no ability to reorganize.  As we've shown

6    with our evidence submitted with the motion, the debtor's been

7    funded in the past by the fraudulent sale of securities.

8         Over the last few days, we had filed on behalf of 11

9    shareholders their short joinders in this motion of people who

10   believe they've been defrauded and would also like the case

11   dismissed.  There's a California investigation pending with

12   regard to that securities fraud.

13        As we've learned in the 341 meeting, the debtor's only

14   plan for reorganizing is to go raise more money.  There's no

15   way it can do so unless it does so in a fraudulent manner.

16        I think there's a risk to the public here of this debtor

17   continuing in possession simply because the only way to fund it

18   is through the sale of more securities using yet again

19   fraudulent financial statements.

20        We believe that dismissal with prejudice is the proper

21   remedy here.  There is ready to be appointed in California a

22   receiver.

23        Unlike our state, California has a strong receivership.

24   There's avoiding actions the receiver can take to recover

25   assets for creditors and other victims of this scheme.

1       This case doesn't belong here.  Its filing here was part

2   and parcel of a bad-faith effort to simply annoy, oppress, and

3   harass creditors, and to avoid the effect of California

4   litigation which has been substantially adjudicated.

5           THE COURT:  Okay.  Opposition.

6           MS. FREEDMAN:  Your Honor, with respect to the venue

7   question, the debtor currently maintains an active business

8   license in Nevada.  Trago also maintains an office.  They

9   maintain their books and records in Nevada.

10      They made requests for extensions to the IRS to give them

11  more time to file their tax returns out of Nevada.  All the key

12  business decisions within the 180 days before the petition were

13  made in Nevada.

14          THE COURT:  Well, where did he live?

15          MS. FREEDMAN:  Mr. Condon himself lived in

16  California.

17          THE COURT:  Well, then how has he made the key

18  business decisions in Nevada?

19          MS. FREEDMAN:  By --

20          THE COURT:  Does he have an office?

21          MS. FREEDMAN:  There is an office here.

22          THE COURT:  Not just a resident-agent office.  An

23  office you pay rent on.

24          MS. FREEDMAN:  There's also --

25          THE COURT:  I don't need your head shaking,

1    Mr. Condon.

2         (Colloquy not on the record.)

3              MS. FREEDMAN:   There is also an office in

4    Incline Village where their COO also handles the administration

5    of the debtor's assets.

6         What happened is within the several years -- I believe

7    about two years before the petition Trago was forced,

8    basically, to streamline their expenses, reduce their

9    employees, work with consultants and independent contractors,

10   and, really, put their resources towards defending these

11   actions out of California.

12        The Court should note that movants including several of

13   these joinder parties have brought these actions in California.

14   Several of these actions have been dismissed with prejudice out

15   of California.

16        This receivership action that was mentioned, the motion

17   for a receiver has been denied on 11 different occasions, so

18   all of these allegations with respect to securities fraud and

19   misrepresentation and such have been presented to the Court in

20   California and have been dismissed.

21        Unfortunately, in order to get to the point where these

22   various receivership actions or requests for injunctions and

23   various federal court claims and state court claims were

24   dismissed, Trago was forced to expend considerable resources in

25   attorneys fees, and that's what essentially drove them into

1    bankruptcy.

2        There's still inventory that Trago maintained.  There's

3    over $4,000,000 worth of inventory.  Trago has been an ongoing

4    concern throughout this litigation, continues to maintain

5    inventory, continues to be an ongoing concern, and continues to

6    conduct business within the ordinary course of its sale of

7    product.

8        That is the point of filing the bankruptcy petition is to

9    be able to maintain the ongoing concern for the benefit of the

10   creditors.

11       What Trago is looking to do is take this opportunity with

12   the bankruptcy to focus on producing product, selling product

13   for the benefit of the creditors and, indirectly, for the

14   benefit of the shareholders to reorganize this corporation, so

15   that it can begin making money again.

16       Unfortunately, because of what's been going on over the

17   last several years, basically, a dispute amongst former

18   partners, that's what's driven Trago into bankruptcy.

19       The Court should note that the movants did not bring an

20   adversary case before this Court.  Our position is really that

21   the adjudication of claims of fraud and misrepresentation

22   should be brought in an adversary case where your Honor will

23   have an opportunity to take evidence, where the debtor would

24   have an opportunity to cross-examine witness testimony.

25       At this point, we have seen no evidence of

1   misrepresentation, wrongdoing, fraud.  What I have are docket

2   sheets out of California indicating that all of these claims

3   are dismissed.  So based upon that, the motion to dismiss

4   should not be granted.  The Court should deny the motion to

5   dismiss.

6        And if the movants wish to pursue their claims in

7   bankruptcy court, they're certainly more than welcome to do

8   that.

9        And we plan on meeting them head-on because throughout the

10  last several years Trago has been able to defeat claims based

11  upon fraud and misrepresentation.

12       So based upon that history before we even got to

13  bankruptcy court, we're confident going forward that we would

14  be able to defeat any claims of fraud in any adversary case

15  where there could be a proper adjudication of the merits of

16  these claims, where there are witnesses, where there's

17  testimony, where the debtor will have an opportunity to

18  cross-examine these individuals.

19       We believe that under the scrutiny of cross-examination

20  these claims certainly would not stand and have not been able

21  to stand in California.

22       With respect to the movants' claims that somehow there is

23  bad faith based upon Trago filing this bankruptcy petition in

24  response to litigation out of the California courts, again, I

25  have found no case law that supports that position, quite to

1    the contrary.

2        There's case law that indicates that one of the purposes

3    of bankruptcy, of the automatic stay, is to give the debtor

4    that breathing room that may be necessary in order to develop a

5    plan of reorganization.

6        Trago is in the process of developing that plan of

7    reorganization, plans to submit that reorganization plan within

8    the exclusivity period, and any objections to their plan really

9    should be made at the confirmation hearing and should be

10    brought in that context, instead of on the basis of a motion to

11    dismiss.

12        We feel that the arguments that are presented by the

13    movants are premature and do not adequately support a dismissal

14    of this action.

15            THE COURT:  Okay.

16            MR. LAXAGUE:  Your Honor, I'll be brief.  Let's go

17    back to venue for just a moment.  The fact that they have a

18    business license in Nevada, if you appoint an agent for service

19    of process in Nevada, you now have to have a business license.

20    It's automatic, and it's an extra $200.

21        My firm does this several times a day as part of its M&A

22    practice.  We have to form entities or appoint agents.  Every

23    time you appoint an agent in Nevada, you automatically have a

24    Nevada business license.  That's all they've done.

25        They've appointed an agent for service of process in

1   Nevada.  They've put its Las Vegas business address down as

2   their address, and now they're insisting that we have an

3   address in Nevada.  Well, maybe, but it's a mail drop.

4   Nobody's doing any business there.

5       There was testimony at the 341 meeting that postpetition

6   the debtor had leased an office up in Incline Village, and that

7   the new chief operating officer who also lives in

8   Southern California was somehow there every day doing business.

9       We haven't had a chance to investigate that, but, quite

10  frankly, it's not relevant because we're looking at the

11  180 days prepetition.

12      Unless Ms. Freedman wants to contend -- and I don't think

13  she has -- that Mr. Condon and, potentially, his new COO,

14  Mr. Pegg, fly to Las Vegas and meet inside a mailbox over off

15  of Eastern and make their corporate decisions, there is no

16  nerve center in Nevada.

17      And -- I'm sorry -- hiring a Nevada bankruptcy lawyer

18  cannot count; otherwise, we'd all have nationwide practices

19  without respect to venue right here.  To keep this case in

20  Nevada, it would just render the venue statute completely

21  meaningless.

22      Going back to, you know, there's no evidence of fraudulent

23  statements, there are mountains of it, utterly fraudulent

24  financial statements used to garner investment.

25      We have declarations on the payment of, you know, massive,

1    you know, personal expenses by Mr. Condon that were adduced in

2    the California case.  We've refiled them here, but they're

3    declarations by those with knowledge.

4        They talk about prior dismissals of these receivership

5    actions.  Those were dismissals either for standing or in some

6    cases for specificity.

7        The receivership, whether a receiver was going to be

8    appointed and that precipitated this case -- and we set this

9    out in the reply -- was the first time that any California

10   judge had actually looked at the merits of receivership, rather

11   than dismissing it on standing or other technical grounds.

12       So this has been looked at by a judge, and the first judge

13   to actually consider this scheme on its merits decided the

14   receiver needed to be appointed immediately.

15       I understand that to get some relief from litigation

16   Chapter 11 can be a permissible way to do that.  The problem is

17   it's the only thing here.

18       This debtor has more or less shut down.  Whatever

19   operations it has are clearly -- and documented -- to be

20   continued from California.

21       This sale that it did postpetition without Court approval

22   with nearly a fifth of its inventory at fire-sale prices was

23   the first transaction of that type it's done in a year, and we

24   have declarations on that from the former sales manager,

25   Mr. Chianese.

1       This case is simply a ruse to avoid that receivership

2   order and to keep Mr. Condon in a position where he can sell

3   more stock in this entity and do it over and over and over

4   again.

5       There's nothing here to reorganize.  There's no connection

6   to Nevada except for the fact that they've rented a mail drop

7   here and appointed an agent for service of process, and, quite

8   frankly, that's not enough.

9           THE COURT:  Okay.  All right.  Well, I'm going to

10  dismiss the case.  This case is clearly DOA.  First of all,

11  venue is improper here, and there are no real assets here.  The

12  operations don't occur here.  The operating statements say it

13  all.

14      They talk about if we have a nerve center.  There's one

15  employee.  And so, for example, looking at Docket 89, this

16  statement was just filed yesterday for September.

17      "Have you paid your bills on time this month?"  "No."

18      "Do you pay your employees on time?"  "No."

19      "Have you deposited all your receipts for your business in

20  the DIP account?"  "No."

21      "Have you paid insurance premiums?"  "No."

22      "Are you current in your payments to the U.S. Trustee?"

23  "No."  At least, this month they didn't pay the attorney

24  anything.

25      It says, "Do you have any bank accounts other than the DIP

1    account?"  "Yes."

2        "Have you sold any assets other than inventory?"  "No."

3    Okay.

4        But the summary of cash on hand is left blank as far as

5    income goes.  No income in September ending September 28th.  It

6    says that 5,000 in fees were paid at the end of September

7    during this reporting period.  Again, we don't have counsel

8    approved.

9        The financial report for that same period shows income of

10    $194.83 for the period ending September of '09.  We have

11    telephone of 1,080.

12        (Colloquy not on the record.)

13            THE COURT:  Interestingly, I don't see -- well,

14    here's some rent.  Most of the expenses are in airfare, a loss

15    of $15,000 income for the month of September.

16        The schedules showed a very small amount of money in the

17    bank.  Each of the reports -- let's see.  This case was filed

18    in September 28th, so let's go to the October statement to see

19    if things are any better.

20        For October 31st, we have -- again, the bills weren't paid

21    on time.  In the end of October, we have cash of $227.74,

22    expenses of 2,256, a cash profit of negative 2,000.

23            MR. LAXAGUE:  Well, your Honor, and I'd like to note

24    that according to Mr. Condon's testimony at the 341 that's

25    after a sale of an entire shipping container of Tequila.  They

1    still had no cash.  Where did it go?

2              THE COURT:  Well, (indiscernible) I'm saying.  It's

3    only $2,000 was my point.

4              MS. FREEDMAN:  Your Honor, that sale --

5              THE COURT:  We have assets --

6              MS. FREEDMAN:  -- would have been reflected in the

7    November report.

8              THE COURT:  Well, I'm just reporting what -- I'm just

9    reading off what the report says.  I'm saying that it shows

10   like $2,000 income.

11        (Colloquy not on the record.)

12             THE COURT:  In essence, this is clearly a DOA.  In

13   another place, it shows one employee.

14        (Colloquy not on the record.)

15             THE COURT:  And the reason to dismiss, a venue is

16   improper here.  There is no business here.  There's no real

17   operations here, and the operations were in Orange County.

18        As to dismissal, it's appropriate because we have an

19   action in California, the receivership, which Mr. Condon can

20   certainly defend.  If there's no merit to that suit, that's the

21   place for him to defend.

22        This business could not be reorganized.  All that it can

23   be is a source for sorting out the rights and liabilities

24   between the parties.

25        And whether one deems it as granting a motion to dismiss

1    because of inability to effectuate a reorganization or

2    abstention because this is best done in a state court

3    abstention, the Court will grant the motion to dismiss.

4            MR. LAXAGUE:  And, your Honor --

5            THE COURT:  Also, finally, we never did get counsel

6    appointed.  This case was filed in September, and we really

7    don't have anything that's happened since then.

8            MR. LAXAGUE:  And, your Honor, just for clarity, that

9    dismissal is with prejudice.

10           THE COURT:  No.  I'm not going to make it with

11   prejudice.

12           MR. LAXAGUE:  Okay.

13           THE COURT:  The case is dismissed.

14           MR. LAXAGUE:  Okay.  Thank you.

15           THE COURT:  Okay.  Thank you.

16           MS. FREEDMAN:  Thank you, your Honor.

17           THE COURT:  All right.  Let me take a recess, and

18   then we'll go back to VCSP.

19       (Court concluded at 02:54:32 p.m.)

20

21

22

23

24

25

20

1      I certify that the foregoing is a correct transcript

2    from the electronic sound recording of the proceedings in

3    the above-entitled matter.

4

5

6    /s/ Lisa L. Cline             12/30/09

7    Lisa L. Cline, Transcriptionist     Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Notice of Motion (with Hearing) - *Page 2*                    **F 9013-1.1**

| | |
|---|---|
| In re<br>   TRAGO INTERNATIONAL, INC.<br><br>                                           Debtor(s). | CHAPTER: 11<br><br>CASE NO.: 8:09-bk-24166-TA |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
969 VALE TERRACE DR., STE E, VISTA, CA 92084

A true and correct copy of the foregoing document described as <u>MOTION TO DISMISS WITH PREJUDICE FOR CAUSE UNDER 11 U.S.C. §1112(b) OR TO CONVERT TO CH 7, ETC</u>            will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On <u>1/5/10</u>            I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:
United States Trustee, ustpregion16sa.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On <u>1/5/10</u>            I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.
TRAGO INTERNATIONAL, INC., 770 NORTHWOOD BLVD., STE 8, INCLINE VILLAGE, NV 89451
WILLIAM RAWSON, ESQ., 2524 SEAVIEW AVE., CORONA DEL MAR, CA 92625
HON. THEODOR ALBERT, U.S. BANKRUPTCY COURT, 411 W. 4TH ST., STE 5085, SANTA ANA, CA 92701-4593

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on            I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| <u>1/5/10</u> | BILL MUSSER | *[signature]* |
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                 **F 9013-1.1**