

1  Richard A. Lucal
   California Bar No. 143372
2  LAW OFFICES OF RICHARD A. LUCAL
   969 Vale Terrace, Suite E
3  Vista, California 92084
   Tel.: (760) 806-8141
4  Fax: (760) 806-8172
   ral@looral.com
5
   *Counsel for George Kosty*
6  *and Douglas Lovison*

7

8

9

10

11

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

12

13  In re:                                    )   Case No.: Case No.:  8:09-bk-24166-TA
                                              )
14  TRAGO INTERNATIONAL, INC.,                )   Chapter 11
                                              )
15          Debtor.                           )
                                              )   **REPLY BRIEF IN SUPPORT OF**
16                                            )   **MOTION TO DISMISS WITH**
                                              )   **PREJUDICE FOR CAUSE UNDER 11**
17                                            )   **U.S.C. §1112(b) OR, IN THE**
                                              )   **ALTERNATIVE, TO CONVERT TO A**
18                                            )   **CHAPTER 7 BANKRUPTCY**
                                              )   **PROCEEDING OR APPOINT A**
19                                            )   **CHAPTER 11 TRUSTEE**
                                              )
20                                            )   Hearing date:  February 3, 2010
                                              )   Hearing Time: 10:30 a.m.
21

22

23          Creditors George Kosty and Douglas Lovison hereby submit this Reply Brief and

24  Supporting Declaration of Richard A. Lucal in Support of their Motion To Dismiss With Prejudice

25  for Cause under 11 U.S.C. §1112(b) or, in the alternative, to convert the case to a Chapter 7

26  Bankruptcy or to appoint a Chapter 11 Trustee.    As a preliminary matter, the Debtor makes no

27  effort to address or rebut many of the critical issues raised in the motion regarding the fraudulent

28  and illegal operation of the Debtor under the control of its Chief Executive Officer, Christopher

**Reply in Support of Motion To Dismiss With Prejudice    Case No.: BK-S-09-28095-LBR**

Condon ("CONDON"), and does not dispute that the previous Nevada bankruptcy was dismissed for cause (no possibility of reorganization) and abstention grounds – after review of very substantial evidence. While the Debtor claims that this motion was filed less than 30 days after the Petition, this motion was filed almost 100 days after Debtor's initial Petition was filed in Nevada.

Further, in an open attack on the movants' counsel, the Debtor's opposition papers rely on declarations (Chou and Condon) filed in opposition to the moving parties' motion for the appointment of a receiver in Los Angeles Superior Court case number YC058784 entitled Desoto, et.al. v. Mediano, et.al. These declarations failed to persuade the California Superior Court that a receiver should not be appointed, and it was the Court's intended appointment of receiver for the Debtor on September 29, 2009 that prompted the successive bankruptcy filings by the Debtor. Further, as described below, the declarations filed by the Debtor in the Los Angeles Superior Court action relate to efforts by the Debtor's CEO, CHRISTOPHER CONDON, to commit acts of securities fraud on behalf of TRAGO INTERNATIONAL. As admitted by CHRISTOPHER CONDON at the January 21, 2010 meeting of creditors, business being conducted by the Debtor is essentially limited to a liquidation of existing inventory and attempts to obtain debt or equity financing – with a goal of raising $10 to $20 million in new investment.

While the Debtor claims that this motion is nothing more than a continuing attack on the company by movants and their counsel, the Debtor fails to address the fact that investors of $4 million in TRAGO INTERNATIONAL believe they were defrauded by CHRISTOPHER CONDON, and the California Department of Corporations is investigating these allegations of securities fraud. (See Req.Jud.Not., filed January 7, 2010, exs. 1, 12, 14, 17, 20, 21, 59, 60, 61, 62, 67 and 69) Efforts to have a receiver appointed and/or bankruptcy dismissed have been supported by eleven limited partners of TRAGO LP, over 25 TRAGO INTERNATIONAL shareholders, seven or more former employees of TRAGO INTERNATIONAL, and distributors and vendors of TRAGO INTERNATIONAL. **THIS MOTION AND THE SUPPORTING ALLEGATIONS**

2

**OF CRIMINAL AND FRAUDULENT CONDUCT BY THE DEBTOR AND ITS CEO,**

**CHRISTOPHER CONDON, ARE SUPPORTED BY SUBSTANTIAL EVIDENCE AND A**

**LARGE NUMBER OF CREDITORS AND EQUITY SECURITY HOLDERS.**

Finally, after this motion was filed and in an apparent effort to prevent the moving parties

from obtaining bank records of CHRISTOPHER CONDON, RICHARD CONDON and entities

owned by CHRISTOPHER CONDON (to be resolved at a motion hearing on January 12, 2010),

the Debtor filed a notice of removal of the Los Angeles Superior Court receivership action

(without providing this Court with copies of the extensive State Court files) and that action is now

an adversary proceeding pending before this Court. (See, Lucal Decl., attached, para. 2)   In light

of this event, the moving parties modify their requested relief to the appointment of a Chapter 11

Trustee or conversation to a Chapter 7 proceeding.

**I**

**FACTUAL ANALYSIS**

A.     **UNDISPUTED EVIDENCE**.

In their opposition papers, the Debtor and its Chief Executive Officer, CHRISTOPHER

CONDON, do not make any effort to dispute critical factual evidence and legal findings submitted

to this Court in support of the motion including:

> (1) A Los Angeles Superior Court, after review of extensive pleadings and declarations,
> had stated its intention to appoint a receiver for the Debtor on September 29, 2009 (See,
> Req.Jud.Not., filed January 7, 2010, exs. 1-29, 46, 47);   The Debtor filed a Chapter 11
> bankruptcy in Las Vegas, Nevada based on its use of a corporate agent office in Nevada;
> In its pleadings and despite its officer(s) residing in Orange County, California, the Debtor
> fraudulently claimed that all critical decisions for the Debtor in the 180 days prior to the
> filing of the Nevada Chapter 11 Petition were made from this corporate agent office. (See,
> Ex. 1 attached; See Req.Jud.Not., filed January 7, 2010, ex. 72);

> (2) The Nevada bankruptcy filing by TRAGO INTERNATIONAL was dismissed on
> December 18, 2009 (the day this action was filed) for cause – including a specific finding
> of no possibility of a reorganization and abstention grounds (with a finding that the proper
> place for this dispute to be resolved is a Los Angeles Superior Court receivership
> action)(See, Req.Jud.Not., filed January 7, 2010, exs. 71 and 72 [pp. 16-19]);

3

(3) The Debtor has engaged in substantial post-petition misconduct since its initial bankruptcy filing in Nevada on September 28, 2009 including: (a) selling substantial inventory at a liquidation price without Court approval; (b) obtaining loans without Court approval; (c) retaining outside professionals without Court approval; (d) filing a frivolous malicious prosecution action against victims of the Debtor and its principal CONDON; and (e) applying a substantial portion of monies received from the liquidation of inventory to make preferential payments of pre-existing debts of creditors (e.g. of the approximate $120,000 obtained from the sale of inventory in November, 2009, TRAGO INTERNATIONAL made preferential payments of $50,000 to its distillery Los Alambiques and $10,000 to a distributor (Youngs Market)(See, Req.Jud.Not., filed January 7, 2010, exs. 51, 52, 66, 67, 68);

(4) As a result of the conduct of CHRISTOPHER CONDON and commission of substantial acts of embezzlement and securities fraud, the Debtor is under investigation by the California Department of Corporations and the Internal Revenue Service Criminal Investigative Division (See, Lucal Decl., filed January 7, 2010; Req.Jud.Not., filed January 7, 2010, exs. 1, 2, 5, 10, 12, 14, 16, 17, 20, 21, 23, 24, 46, 47, 59, 60, 61, 62, 67, 69); CONDON has diverted much of the assets, revenue and investment monies of the Debtor to his own personal benefit. (Id.)

(5) Defendants have systematically refused to allow shareholders, including plaintiff LOVISON, access to TRAGO INTERNATIONAL financial records and have refused to comply with a November, 2008 Order from the Delaware Court of Chancery to produce audited financial statements (Req.Jud.Not., filed January 7, 2010, exs. 1, 2, 12, 14, 17, 20, 21, 22, 23, and 31); Prior to the filing of the initial Chapter 11 Petition by TRAGO INTERNATIONAL, approximately one dozen TRAGO INTERNATIONAL shareholders have been refused access to financial records after demand and in clear violation of California Corporations code section 1601; CHRISTOPHER CONDON, as the sole officer and director of TRAGO INTERNATIONAL, has failed to account for $8.4 million in investment monies, approximately $4 million in sales, and $700,000 in alleged loans from CONDON and his father;

(6) Since October, 2008, TRAGO INTERNATIONAL has had no functioning office, no employees and had no substantial sales in 2009 (See, Req.Jud.Not., exs. 2, 3, 4, 29, 56, 57, 63, and 68)(e.g. ***even with the recent post-petition liquidation of a substantial percentage of the Debtor's inventory, the Debtor had sales in 2009 of less than $175,000***); See Chianese Declaration filed concurrently herewith. At this time, TRAGO INTERNATIONAL's ***ONLY*** business includes the liquidation of existing inventory and efforts to obtain debt or equity financing; The company being used by TRAGO INTERNATIONAL in its marketing efforts, SSC Marketing, Inc., has a "suspended" status with its state of incorporation, California, and is operating in violation of the law (See, ex. 2 attached);

(7) TRAGO INTERNATIONAL was able to sell $4 million in tequila through false and/or misleading representations by CONDON to distributors – many of which have excessive remaining inventory and some are owed money by TRAGO INTERNATIONAL; (See Req.Jud.Not., filed January 7, 2010, exs. 3, 4 and 7); CONDON has refused to respond to inquiries from U.S. distributors who believe that the company has abandoned the brand (Id.);

(8) CHRISTOPHER CONDON obtained consent to a February, 2005 Settlement Agreement from movant LOVISON through acts of extortion, fraud and securities fraud and in breach of his fiduciary duties (See, Req.Jud.Not., filed January 7, 2010, ex. 60);

(9) CHRISTOPHER CONDON has engaged in systematic witness tampering, with threats of frivolous litigation against TRAGO INTERNATIONAL shareholders and former employees, in an effort to prevent anyone from challenging his fraudulent, tortious and illegal conduct; CHRISTOPHER CONDON has directed that TRAGO INTERNATIONAL file and pursue litigation against those who challenged his misappropriation of the TRAGO LP assets or his other wrongful conduct (See, Req.Jud.Not., filed January 7, 2010, exs. 30, 48, 52, 46, 47, 59, 61, and 66);  With one frivolous action still pending and not served on defendants, CONDON and TRAGO INTERNATIONAL have recently lost two of those actions – exposing TRAGO INTERNATIONAL to substantial liability for attorneys' fees/costs and malicious prosecution (See, Req.Jud.Not., filed January 7, 2010, exs. 30, 48, and 52)

While CONDON has been engaged in systematic post-petition liquidation of the primary asset of TRAGO INTERNATIONAL, its tequila, CONDON has failed to disclose to this Court that he had TRAGO INTERNATIONAL pay substantial sums of monies to prosecute and obtain patents in his own personal name for the bottle and cap assembly being used by the Debtor.   The bottle design was actually developed for the TRAGO INTERNATIONAL  predecessor, TRAGO LP. (See, Req.Jud.Not., filed January 7, 2010, ex. 60)  While claiming at the January 21, 2010 meeting of creditors that he personally paid for the prosecution of these patents, the Debtor's ledgers show payments to the law firm prosecuting the patents of $19,900 during the month the patents were applied for and the following month (See, ex. 3 attached).  In 2006 and 2007 alone, CONDON directed that TRAGO INTERNATIONAL pay him $200,000 in license fees. (Id.) CONDON has failed to disclose the existence of these patents to this Court or the existence of his alleged license agreement.

C.    Past and Prospective Acts of Securities Fraud by the Debtor.

In the opposition brief, the Debtor does not dispute the overwhelming evidence that CONDON has committed systematic acts of securities fraud throughout his tenure at TRAGO INTERNATIONAL and that TRAGO INTERNATIONAL/CONDON misappropriated the assets

Reply in Support of Motion To Dismiss With Prejudice    Case No.: BK-S-09-28095-LBR

of TRAGO LP. With regard to CHRISTOPHER CONDON's current efforts to obtain investment of $10 to $20 million in TRAGO INTERNATIONAL, there can be no doubt that these efforts involve systematic acts of securities fraud. For example, the Debtor, in its opposition, cites to the movant's counsel's communications with Jean-Paul Benizri and Philip Chou as alleged acts of misconduct by the moving parties. The Debtor fails to inform the Court of the true facts.

With regard to Jean-Paul Benizri, the evidence before this Court demonstrates that CONDON and Benizri disseminated, in April, 2009, a false announcement to the industry that Benizri's company, Whitley Neill, was taking over the worldwide rights to TRAGO and that TRAGO INTERNATIONAL was moving its headquarters to Fort Lauderdale, Florida. This announcement was disseminated for the apparent purpose of committing securities fraud. (See Req.Jud.Not., filed January 7, 2010, exs. 46, 47 and 59)(i.e., an email from Benizri to Condon stating that they should keep material information from prospective investors – Req.Jud.Not., filed January 7, 2010, ex. 46) After movants' counsel obtained evidence of this fraudulent intent, he sent notice of pending litigation to Mr. Benizri and obtained confirmation that no transaction had actually taken place between TRAGO INTERNATIONAL and Whitley Neill. Several weeks after the notice was sent to Benizri, Benizri was identified on the TRAGO INTERNATIONAL website as the company's proposed President – for the apparent purpose of soliciting new investment in TRAGO INTERNATIONAL. (See Lucal Decl., attached, para. 9)

On July 22, 2009 in the Los Angeles receivership action, the Court issued an Order to Show Cause indicating that it would be appointing a receiver for the Debtor but wanted further briefing as to whether a separate receiver should be appointed for TRAGO LP and TRAGO INTERNATIONAL and as to the amount of the receiver's bond. (Req.Jud.Not., filed January 7, 2010, ex. 27) In response to the Order to Show Cause, the Debtor submitted a number of declarations to the Los Angeles Superior Court which identified that the Debtor had allegedly entered into contracts with various distributors projected to generate $200,000,000 in sales over the

1 | next four years. (See, Exhibits 4, 7 and 8)  Each of the declarations filed in August, 2009

2 | reference agreements entered into between alleged distributors and TRAGO INTERNATIONAL.

3 | **NONE OF THESE ALLEGED AGREEMENTS ARE IDENTIFIED AS EXECUTORY**

4 | **CONTRACTS ON THE DEBTOR'S SCHEDULES, AND THE DEBTOR FILED FOR**

5 | **CHAPTER 11 PROTECTION ONLY 6 WEEKS AFTER FILING THE DECLARATIONS.**

6 | Of critical importance, while claiming to have $200,000,000 in projected sales for the company as

7 | of August, 2009, CONDON filed a declaration essentially seeking the Court's permission to bring

8 |

9 | in $20,000,000 in new investment. (Req.Jud.Not., filed January 7, 2010, ex. 26)  The apparently

10 | bogus declarations of Chou, Myden and Triglia were circulated to TRAGO INTERNATIONAL

11 | shareholders, and the information was likely provided to potential investors in conjunction with

12 | CONDON's efforts to obtain investment despite Debtor's pending receivership appointment.

13 | Of great interest, in the Los Angeles Superior Court action, CONDON submitted <u>two</u>

14 | declarations from an individual named Philip Chou – one as a director of Haq Holdings, Inc. or

15 | Haq Holdings International (both are used in adjacent sentences) and one as the chairman of China

16 |

17 | Strategic Alliance Co., Ltd.  (See, Ex. 4 attached)  The two declarations are directly contradictory.

18 | On behalf of Haq Holdings, Mr. Chou states that his company was to invest an alleged

19 | $90,000,000 in TRAGO INTERNATIONAL.  After talking with movants' counsel (knowing that

20 | prior RICO litigation had been dismissed), Mr. Chou stated that: "It is against our Haq Holdings

21 | to invest in a corporation that has a RICO litigation pending."   On behalf of China Strategic

22 | Alliance, Mr. Chou was willing, in August, 2009, to invest $2.5 million in TRAGO

23 | INTERNATIONAL and claimed that a "joint venture" between the companies would generate

24 |

25 | $100,000,000 in sales. (See, Ex. 4 attached)  Chou's declarations are totally inconsistent and

26 | provide no foundation for the statements made or opinions expressed.  ***THE DEBTOR'S***

27 | ***WILLINGNESS TO DEFRAUD CAN BE DEMONSTRATED BY THE FACT THAT MR.***

28 | ***CHOU ALLEGEDLY SIGNED BOTH DECLARATIONS ON AUGUST 1, 2009 – ONE IN***

*LAGUNA NIGEL, CALIFORNIA AND THE OTHER IN BEIJING, CHINA.  THE FAX INFORMATION FOR THE BEIJING DECLARATION APPEARS TO BE REDACTED.*

Not only do the defendants commit acts of securities fraud on a systematic basis, but they structure their efforts to obtain investment in a ponzi scheme format.  For example, on August 9, 2009, CONDON sent a text message to a potential investor Jubin Torkan which stated the following:  **"Trago is going to take off soon. I am raising 20Million to globalize the brand. Do you want to introduce some investors and make a Cash and Stock Fee. I am just opening raise.... Lets catch up.:) CC."** (See Req.Jud.Not., filed January 7, 2010, ex. 24)  It is illegal to give kickbacks for referring investors – much less cash payments with no disclosure to the investor that some of the investment will be paid to the referring party.  By obtaining referrals for a fee, defendants can obtain investment with the conduct of much lower levels of due diligence.  (See Req.Jud.Not., filed January 7, 2010, exs. 1, 2, 21, 62, 67)

Of critical importance to the Court's understanding of CONDON's willingness to commit acts of securities fraud, the movants recently took the deposition of the accountant for TRAGO INTERNATIONAL, Gary Capata, CPA, and obtained a copy of an Income Statement prepared by Capata and disseminated to CONDON and third-party Dennis Ardi in or about March, 2009.  This CPA-generated Income Statement identifies that TRAGO INTERNATIONAL had a profit in 2008 of over $220,000. (See, Ex. 5)   The document following the Income Statement in Capata's files appears to be an internally generated Trago International profit and loss – showing a loss for the year 2008 of over $2.5 million (the same figures reported to this Court in the Debtor's filings) and containing major hand-written edits to change the $2.5 million loss into a $220,000 profit. (See, Ex. 6)  It is likely that the clearly false CPA-generated Income Statement has been and/or is being used to obtain investment in Trago International.

While CONDON is claiming that he can restructure TRAGO INTERNATIONAL by bringing in new investment and given his history of the commission of systematic acts of securities

**Reply in Support of Motion To Dismiss With Prejudice**    Case No.: BK-S-09-28095-LBR

fraud and other crimes, it is unlikely that CONDON will disclose a number of material facts

including: (1) this bankruptcy filing; (2) the bases for the dismissal of the Nevada bankruptcy;

(3) the ownership of the intellectual property used by TRAGO INTERNATIONAL; (4) concerns

of securities fraud expressed by shareholders; (5) claims of fraud by distributors; (6) pending

litigation and disputes regarding the fraudulent conveyance or theft of the TRAGO LP assets;

(7) the true nature of the audit and criminal investigation by the IRS and the investigation by the

California Department of Corporations; (8) claims of embezzlement or theft by CONDON and

CONDON's use of company funds to obtain increased equity for CONDON personally, (9) that

the company has lost over $7 million in the past 3 years, etc.   At this time, the evidence before this

Court demonstrates that the PRIMARY assets of TRAGO INTERNATIONAL may be claims

against CHRISTOPHER CONDON, RICHARD CONDON or their agents and co-conspirators.

CONDON has also demonstrated a willingness to pursue frivolous litigation against his victims.

With a Debtor-in-Possession, valuable claims of the Debtor will not be pursued and the assets of

the estate will be dissipated on frivolous litigation intended to protect CONDON.

    B.    <u>Fraud on this Court.</u>

    At the time of the filing of movants' opening brief, movants had not obtained copies of the

schedules and statement of financial affairs filed in this action.  Consequently, the moving papers

discussed active fraud on the Nevada bankruptcy court with regard to the Debtor's filings in

September, October and November, 2009.  To date, the Debtor has failed to file a list of equity

security holders in this action.   The schedules and statement of financial affairs filed in this action

mirror the fraud committed on the Nevada bankruptcy court in the following ways:

(1) the debtor failed to identify an IRS audit and failed to identify as creditors a number of
individuals and entities pursuing litigation against TRAGO INTERNATIONAL including:
(a) Campus Partners (landlord under an unexpired business lease); (b) Lovison, Kosty,
Desoto and Cardenas (plaintiffs in a pending Superior Court action against TRAGO
INTERNATIONAL in Los Angeles Superior Court); (c) Lovison, Kosty, Desoto, Cardenas
and Terrill (appellants in a Ninth Circuit appeal from a District Court's dismissal, on
standing and specificity grounds, of RICO claims brought against TRAGO

INTERNATIONAL; (d) Montgomery (plaintiff in an Orange County Superior Court action against TRAGO INTERNATIONAL challenging ownership of the company's assets); (e) Villaneda (former employee with a $12,000+ judgment against TRAGO INTERNATIONAL in an Orange County Superior Court action); and (f) a number of former employees owed compensation or reimbursement.  The Debtor failed to identify that it has liability for attorneys' fees in two civil actions recently decided against CONDON/TRAGO.  (Req.Jud.Not., exs. 55, 59, 61, 62)

(2)  Schedule B - Personal Property – The Debtor identifies only one U.S. patent and one U.S. trademark (allegedly assigned by TRAGO LP in 2005); As discussed above, the Debtor fails to identify that its CEO, CONDON, used company funds to design and develop a bottle design and a cap/stopper design and used company funds to pay for the prosecution of patents in his individual name; (Req.Jud.Not., exs. 40-42, 55 and 59, subexhibits. 41, 42)

(3) Schedule G – Executory Contracts and Unexpired Leases – The Debtor fails to identify an alleged employment contract with CONDON and which CONDON claims is the basis for TRAGO INTERNATIONAL paying for all of CONDON's fees to defend claims raised against him and to prosecute claims on CONDON's behalf;  The Debtor fails to identify CONDON's alleged license agreement for the intellectual property discussed in item 2 immediately above, the contract with storage company for company equipment, and the alleged contract for the purchase of assets from TRAGO LP (See Req.Jud.Not., exs. 33, 55 and 59, subexhibits 18, 41 and 42);

Statement of Financial Affairs:    The Statement of Financial Affairs filed in this action is identical to that filed in the Nevada bankruptcy and contains all of the blatantly false and misleading statements discussed in the initial moving papers.

II

## CONCLUSION

Just as in the case of the Nevada bankruptcy filing of the Debtor, the Debtor comes to this Court "DOA."    There is no legitimate business being conducted, and no real possibility of reorganization while the Debtor is under the control of CHRISTOPHER CONDON.    Therefore, the movants respectfully request that the Court either appoint a Chapter 11 trustee or convert this proceeding to a Chapter 7 bankruptcy.

RESPECTFULLLY SUBMITTED this 26th day of January, 2010.

LAW OFFICES OF RICHARD A. LUCAL

Respectfully submitted, Richard A. Lucal (SBN 143372),  Attorney for movants DOUGLAS LOVISON and GEORGE KOSTY

## REPLY DECLARATION OF RICHARD A. LUCAL IN SUPPORT

I, RICHARD A. LUCAL, do hereby declare:

1. I am a licensed California attorney authorized to practice law in the Courts of the State of California and before the U.S. District Court for the Central District of California. I am the attorney of record for movants DOUGLAS LOVISON and GEORGE KOSTY in this bankruptcy proceeding. I am also the attorney of record for defendant DOUGLAS LOVISON in an action filed by CHRISTOPHER CONDON and TRAGO INTERNATIONAL in December, 2006 entitled CONDON and TRAGO INTERNATIONAL v. MONTGOMERY, et.al., case number YC054317, and have represented LOVISON in that action and the related appeal since the inception of the lawsuit. I was also the attorney of record for LOVISON in an Orange County Superior Court case filed against CHRISTOPHER CONDON, TRAGO INTERNATIONAL and other named defendants in December, 2006 and which was dismissed, without prejudice, in May, 2008 to pursue other relief collectively with other victims of CHRISTOPHER CONDON and TRAGO INTERNATIONAL. I am the attorney of record in a case on appeal to the United States Court of Appeals for the Ninth Circuit, following the District Court's dismissal of RICO claims (on standing grounds) brought by TOMMY DESOTO, ANTOINETTE CARDENAS, GEORGE KOSTY against TRAGO INTERNATIONAL, CHRISTOPHER CONDON (CEO of TRAGO INTERNATIONAL) and other defendants in the United States District Court for the Central District of California entitled *Desoto et al v. Condon, et.al.*, case number SACV08-514 AHS. I am the attorney of record for LOVISON, Tommy Desoto, George Kosty and Antoinette Cardenas in a Los Angeles Superior Court case filed in December, 2008 against CHRISTOPHER CONDON, TRAGO INTERNATIONAL and other named defendants, case number YC058784. I was also the attorney of record for LOVISON and George Kosty in a Chapter 11 bankruptcy proceeding filed by TRAGO INTERNATIONAL and which was dismissed, for cause, by the

**Reply in Support of Motion To Dismiss With Prejudice    Case No.: BK-S-09-28095-LBR**

Court on December 18, 2009 in response to a motion filed by my office and my co-counsel. I have personal knowledge of the information contained in this declaration and could provide competent testimony at a hearing or trial.

2.    As in past pleadings filed with this Court, the Debtor claims that the movants have unsuccessfully attempted to obtain the appointment of a receiver on ten occasions in four actions. The Debtor fails to note that NOT A SINGLE RECEIVER MOTION was denied on the merits. The motions referenced in the Opposition papers were either rendered moot by a standing dismissal of the action or, in the case of ex parte applications, the Court required that a noticed motion be filed. The sole Court which reviewed the substantial evidence in support of a motion for the appointment of a receiver in Desoto, et.al. v. Mediano, et.al. , Los Angeles Superior Court case number YC058784 (hereinafter "Los Angeles Receivership Action"), determined that a receiver should be appointed. (See, Req.Jud.Not., filed January 7, 2009, exs. 27 and 28 (rulings) and exs. 1-24, 29-44, 46-47, and 53 (supporting evidence)).   As to the Debtor's claim that I dismissed a State Court action two court days prior to trial, this is a dishonest representation that has been repeated by the Debtor's counsel in a number of actions.   The case had been tri-furcated, and LOVISON was faced with the prospect of three extended trials which would require the presentation of much of the same evidence – some to the Court in a bench trial and some to a jury. The case was dismissed two Court days prior to the first of the three trials—a trial on a sub-issue involving whether certain ownership interests had been transferred by Lovison.   At the time of the dismissal, Lovison had joined his claims with a number of other victims and was pursuing a RICO action in U.S. District Court for the Central District of California.   That case, 08SACV0514, was dismissed for lack of specificity and standing (i.e. that the claims should have been pursued by entities TRAGO LP and TRAGO INTERNATIONAL and not individuals) is currently on appeal before the Ninth Circuit Court of Appeals.

3.      After this motion was filed on January 7, 2010, I was to attend a hearing in the Los Angeles Superior Court receivership action, entitled <u>Desoto, et.al. v. Mediano, et.al.</u>, case number YC058784, on January 12, 2010.   The hearing was, in part, to resolve Christopher Condon's motion to quash a subpoena that I had served on Bank of America to obtain bank records of Richard Condon, Christopher Condon and various entities owned or controlled by Christopher Condon (CT Holdings International, Pulse Entertainment, L.L.C., and RUVA International, Inc.). I anticipated that the bank records would identify substantial monies diverted from TRAGO INTERNATIONAL and/or TRAGO LP for the use of Christopher Condon and Richard Condon. The records might also identify other accounts where assets had been transferred by the Condons. At the hearing, counsel for CHRISTOPHER CONDON and the other defendants did not appear. A representative of theirs, Richard Hurley, filed a notice of removal of the action to this Court.  I am informed and believe that defendants have failed to file a copy of all of the pleadings filed in that action with this Court.   Those pleadings consist of approximately 10,000 to 15,000 pages of intense motion practice and detailed complaints.  With the removal of the Los Angeles Superior Court case, the critical discovery from Bank of America will be stalled for a number of months.

4.      On January 21, 2010, I participated in the section 341 meeting of creditors in this bankruptcy proceeding.   CHRISTOPHER CONDON appeared on behalf of the Debtor.   During the meeting, CHISTOPHER CONDON made the following statements under oath:   (a) other than liquidating inventory, the Debtor's business consists of efforts to obtain debt and equity placements – with the goal of raising $10 to $20 million in investment; (b) CONDON is not sure what materials are being provided to potential investors but believes they are being directed to the bankruptcy file with regard to financial statements for TRAGO INTERNATIONAL; (c) after claiming ignorance initially, CONDON claimed that he did own the patent for the bottle being used by TRAGO INTERNATIONAL, that he had paid for the full patent prosecution and design efforts, and that he had licensed the intellectual property to TRAGO INTERNATIONAL; (d)

**Reply in Support of Motion To Dismiss With Prejudice**    Case No.: BK-S-09-28095-LBR

CONDON claimed that he had entered into an employment agreement with TRAGO INTERNATIONAL which requires the company to defend and indemnify him in pending litigation; (e) CONDON could not explain why his employment and license agreement were not identified on the TRAGO INTERNATIONAL schedule of executory contracts; (f) CONDON could not identify the basis for the $155,000 owed to the largest creditor identified on TRAGO INTERNATIONAL's list of unsecured creditors, John Adsit; (g) while CONDON initially claimed that TRAGO INTERNATIONAL had $1.7 million in inventory at "cost" basis, he later testified that the major portion of the inventory was in Mexico and that TRAGO INTERNATIONAL had no paid for the "juice" (e.g. tequila); (h) while attorney Dennis Ardi is identified in the Debtor's filings as owning more than 5% equity in the Debtor, CONDON testified that Ardi owns 1% and that CONDON transferred 1% of his stock to Ardi for unidentified services provided to CONDON; (i) CONDON and Pegg are the only employees of the Debtor and any other work being performed is done by contractors supplied by SSC Marketing, Inc.; CONDON is unconcerned that SSC Marketing, Inc. is not authorized to conduct business; (j) the Debtor is retaining new counsel and intends to borrow money to pay the initial retainer; (k) while CHRISTOPHER CONDON claimed that his father, Richard Condon, is a secured creditor, he could not identify where any UCC-1 had been filed; and (l) CONDON stated that there were errors in the schedules filed with the Court and claimed that the errors were a result of an "emergency" filing – despite TRAGO INTERNATIONAL having initially filed bankruptcy more than 3 months before schedules were filed in this Court.

5.    With regard to concerns over the commission of acts of securities fraud by the Debtor, I took the deposition of the Debtor's alleged accountant, CPA Gary Capata, in September, 2009. Mr. Capata personally provided me with copies of the Debtor's general ledger which he testified had been provided to him to provide to the Internal Revenue Service for an audit. I later obtained copies of all of Mr. Capata's files pursuant to a subpoena. Attached as Exhibit 5 is an

email cover sheet and attached Income Statement produced by Gary Capata and copied pursuant to a subpoena served by my office.   The email cover sheet is addressed to CHRISTOPHER CONDON, RICHARD CONDON and Dennis Ardi (discussed above).   Attached as Exhibit 6 is the document which immediately followed the Income Statement in Mr. Capata's files – according to the copies received by my office from the copy service.   This appears to be a Debtor generated profit and loss statement showing a loss of over $2.5 million for the year 2008 – containing a number of hand-written revisions.   The $2.5 million loss for Trago International is consistent with documents filed in support of the bankruptcy petition in this action.

6.   In its opposition, the Debtor claims not to have committed fraud on the Nevada bankruptcy court by claiming that it was conducting business in Nevada through its corporate agent office.   However, in the Debtor's opposition brief, it claimed that the Nevada corporate agent office was the "nerve center" of the company and that all critical decisions for the Debtor were made in Nevada during the 180 days prior to the filing of the petition – despite the Debtor's only officers residing in Orange County, California.   Attached as Exhibit 1 are excerpts from the Debtor's opposition brief.   The Debtor even identified CHRISTOPHER CONDON's address in the Nevada bankruptcy file as the Nevada corporate agent office.

7.   With regard to SSC Marketing, Inc., the company that CONDON stated, during the meeting of creditors, is responsible for the marketing efforts of TRAGO INTERNATIONAL, INC., attached as Exhibit 2 is a printout from the California Secretary of State website confirming that the company has a suspended status in its state of incorporation, California.

8.   With regard to CONDON's claim at the meeting of creditors that he had paid all costs relating to the prosecution of the patents for the TRAGO bottle and cap/stopper design, I searched the Trago International general ledgers for payments to the Myers, Dawes law firm which is identified on the U.S. Patent and Trademark Office website as having prosecuted the patents. Attached as Exhibit 3 are excerpts from the 2006 general ledger for Trago International which

**Reply in Support of Motion To Dismiss With Prejudice**    Case No.: BK-S-09-28095-LBR

1    were provided to me by Gary Capata, the company's accountant. These excerpts identify

2    payments by Trago International to Myers, Dawes of $19,900 in August/September, 2006 – at or

3    about the date of the patent applications as shown on the U.S. Patent and Trademark website.

4    Exhibit 3 also identifies the $100,000 payment to CONDON in October, 2006 for license fees.

5        9.    With regard to Jean-Paul Benizri of Whitley Neill, I did not notify Benizri of

6    pending litigation until AFTER I determined that Benizri had sent a false announcement that his

7    company, Whitley Neill, had taken over the worldwide rights to Trago and that Trago was moving

8    to his offices in Fort Lauderdale. I further learned, from an email string between Benizri and
9

10   Condon, that this false announcement was sent for the likely purpose of committing securities

11   fraud with regard to potential investors. (See Req.Jud.Not., filed January 7, 2010, exs. 46 and 47)

12   In my letter, I notified Benizri of pending litigation and issues involving the ownership of the

13   brand. Mr. Benizri responded with an email stating that his company had no contract with Trago

14   International. Several weeks later, Mr. Benizri was identified on the TRAGO INTERNATIONAL

15   website as the Proposed President of the company. Even after Benizri sent CONDON an email
16

17   requesting the removal of his name from the TRAGO INTERNATIONAL website (See Supp.

18   CONDON decl., filed in opposition to this motion), I frequently checked the Trago International

19   website and noted that CONDON did not remove Mr. Benizri's name from the TRAGO website

20   until almost 2 months after the request was made by Benizri. The only apparent purpose for this

21   information to remain on the website was to dupe potential investors into believing that CONDON

22   has an industry professional running TRAGO.

23       10.    With regard to the claim by the Debtor that I threatened to sue a potential investor,
24

25   Philip Chou, unless paid substantial sums of money, this claim is absurd and false. In March,

26   2009, I learned that a Philip Chu (or Chou) was allegedly evaluating the purchase of TRAGO

27   INTERNATIONAL. I was able to get the cell number for Mr. Chou and did call Mr. Chou on or

28   about March 8, 2009. Mr. Chou claimed to be associated with a holding company from Dubai

with approximately $50 billion in assets.  Mr. Chou, in this and a later conversation, claimed the

following: (1) CONDON owned 71% of TRAGO INTERNATIONAL and could sell the brand

without any approval; (2) he would purchase the brand from CONDON and leave it up to the

shareholders and claimants to fight it out with CONDON; (3) he did not care that there was

pending litigation or claims raised against CONDON or TRAGO INTERNATIONAL; (4) he was

not concerned what CONDON did with the money; (5) he would not have his in-house counsel

talk with me; (6) he believed that he could buy the brand at a discounted price due to pending

litigation; and (7) if any claimants tried to sue Chou or his company related to improprieties in the

purchase, Chu stated that he would set aside millions of dollars to "crush" me and others in any

litigation.  Chou further told me that he intended to close the sale within 30 days.

11.  I asked Mr. Chou if he was concerned that CONDON had placed the bottle patent

in his individual name.  Mr. Chou said that he was not concerned about the bottle patent or bottle

design.  I asked if he was concerned that CONDON had not paid the distillery and might lose the

contract for the manufacturing of the tequila.  Chou said that he was not concerned about the

formula and was not concerned about inventory.  Chou's company ONLY wanted to buy the name

and to sell product under the Trago name in China.  I viewed this conversation as quite bizarre and

determined that Mr. Chou had no credibility and was unlikely to be legitimate.  I later learned

from a third party that Mr. Chou had lived in CONDON's house in Orange County for 2 to 3

weeks in January and/or February, 2009.   I found this quite inconsistent with the many

representations of Mr. Chou.

12.     Mr. Chou and I did have a discussion as to what it would take to resolve the

dispute.  I never demanded a payment to myself of any monies.  I sent a text message to

Mr. Chou which stated my belief that $20 million would likely resolve the dispute and that a Court

would have to determine how the money would be allocated.  It was my belief that that amount

could resolve the claims of my clients, the former employees of TRAGO INTERNATIONAL and

Reply in Support of Motion To Dismiss With Prejudice    Case No.: BK-S-09-28095-LBR

investors in TRAGO INTERNATIONAL who were victims of securities fraud.    Mr. Chou

responded in a phone conversation by stating that he would buy the company for $6 million by the

end of March, 2009 and would never pay $20 million.

13.    On July 22, 2009 in the Los Angeles receivership action, the Court issued an order

to show cause indicating that it was going to appoint a receiver and asking for further briefing as to

whether separate receivers needed to be appointed for TRAGO LP and TRAGO

INTERNATIONAL and the amount of the receiver's bond. (See, Req.Jud.Not., filed January 7,

2010, ex. 27)    In response to this Order to Show Cause, In August, 2009 and in the Los Angeles

Superior Court receivership action, the Debtor filed two declarations from Philip Chou – one as the

purported representative of a Dubai company (a copy of which is filed in opposition to this

motion) and a second declaration as a representative of a Chinese company – the China Strategic

Alliance.   The second Chou declaration is attached hereto as Exhibit 4.  Of note, while Chou states

in one declaration that he would not invest in Trago International on behalf of his Dubai company,

the other declaration states that his Chinese company is willing to enter into a joint venture with

Trago International as long as CONDON is in control.   Attached to Exhibit 4 is a purported

contract between the China Strategic Alliance and Trago International.   Of note, both declarations

purport to be signed the same day – one in Orange County, California and the second in Beijing,

China.

14.    In further response to the Order to Show Cause issued in the Los Angeles Superior

Court receivership action, the Debtor filed declarations from Darlene Joy Triglia and Mark Myden

attached hereto as Exhibits 7 and 8.     Both the Triglia and Myden declarations address contracts

entered into by Trago International and various distributors.  Between the attached Chou, Triglia

and Myden Declarations, the Debtor represented to the Los Angeles Superior Court, in August,

2009, that it had approximately $200,000,000 in projected sales essentially under contract with

distributors.  Despite having an alleged $200,000,000 in projected sales lined up, CONDON

**Reply in Support of Motion To Dismiss With Prejudice**    Case No.: BK-S-09-28095-LBR

1   submitted a declaration essentially asking for the Court's blessing to obtain an additional $20

2   million in investment. (See Req.Jud.Not., filed January 7, 2010, ex. 26)    I have talked to various

3   Trago International shareholders who were given copies of the Myden, Chou and Triglia

4   declarations and am informed and believe that this information was used to solicit new investment

5   in Trago International.    Of note, NONE of the contracts referenced in the Chou, Triglia and

6   Myden Declarations attached are identified as executory contracts of the Debtor, and the Debtor

7   filed its initial bankruptcy petition only 6 weeks after the declarations were filed with the Los

8   Angeles Superior Court.

9

10          Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

11   and correct, and that this Declaration is made and dated this 26th of January, 2010 at Vista,

12   California.

13                                          _____

14                                                Richard Lucal

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INDEX OF EXHIBITS

EX.NO.                DESCRIPTION

1. Excerpts from the Debtor's Opposition to Motion to Dismiss Nevada Bankruptcy filing

2. Printout from California Secretary of State re: SSC Marketing, Inc.

3. Printout from Trago International general ledger for 2006 identifying payments to the
   Myers, Dawes law firm

4. Declaration of Philip Yuyao Chou filed in Los Angeles Superior Court on August 13,
   2009, case number YC058784

5. CPA generated 2008 Income Statement for Debtor

6. Debtor's 2008 Profit and Loss Statement from accountant's file with hand-written
   modifications

7. Declaration of Darlene Joy Triglia filed in Los Angeles Superior Court on August 13,
   2009, case number YC058784

8. Declaration of Mark Myden filed in Los Angeles Superior Court on August 13, 2009,
   case number YC058784

# EXHIBIT 1

1   JOHN PETER LEE, LTD.
    JOHN PETER LEE, ESQ.
2   Nevada Bar No. 001768                              *E-Filed 11-30-09*
    YVETTE R. FREEDMAN, ESQ.
3   Nevada Bar No. 009898
    830 Las Vegas Boulevard South
4   Las Vegas, Nevada 89101
    Ph: (702) 382-4044/Fax: (702) 383-9950
5   E-Mail: info@johnpeterlee.com
    Attorneys for Debtor
6

7

8                   UNITED STATES BANKRUPTCY COURT

9                        DISTRICT OF NEVADA

10  In Re:                              )
                                        )
11  TRAGO INTERNATIONAL, INC.,          )      CASE NO.:09-28095-LBR
                                        )      CHAPTER 11
12          DEBTOR.                     )
                                        )      HEARING
13                                      )      DATE: December 16, 2009
                                        )      TIME: 1:30 p.m.
14  _____ )      PLACE: 300 Las Vegas Blvd., South
    1877.023803-mh                                     Las Vegas, NV 89101
15

16          DEBTORS' OPPOSITION TO MOTION TO DISMISS
                        WITH PREJUDICE

17          COMES NOW, Debtor, TRAGO INTERNATIONAL, INC.(the "Debtor" or "Trago") hereby

18  opposes Parties In Interest George Kosty and Douglas Lovison's Motion to Dismiss With Prejudice

19  for (1) Improper Venue, and (2) Cause Under 11 U.S.C. § 1112(b).   This Opposition is made and

20  based upon the papers and pleadings on file herein, the Points and Authorities attached hereto, and

21  any oral argument of counsel adduced at time of hearing.

22                          POINTS AND AUTHORITIES

23  INTRODUCTION

24          The substance of the Motion to Dismiss rests upon the Movants' contention that because the

25  Debtor is defendant and its assets are in controversy in California litigation, the present bankruptcy

26  case must be dismissed.  And while the Motion recites bold accusations of fraud and criminal

27  conduct which have never been adjudicated on their merits, the Movants seek to dismiss the present

28  bankruptcy case instead of pursuing their claims in an adversary proceeding in this Court which is

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

1    As a result of the above frivolous and abusive cases, Trago commenced a case for malicious

2    prosecution against Lovison and others, captioned as <u>Condon, Trago International Inc. v. Lovison</u>,

3    Case No. 00122756. In this malicious prosecution case, Trago attempts to recoup damages it has

4    suffered as a result of defending the baseless claims of Movants and others. Throughout the last

5    several years, Trago has been forced to defend itself in the above referenced litigation thereby

6    preventing Trago from maximizing its potential revenue. In 2008 alone, Trago paid out

7    approximately $337,158.86 in legal fees. See Exhibit 8. Such costly litigation has effectively

8    drained Trago's resources and forced it into bankruptcy.

9    **C. Trago's Operations Within 180 Days Before Filing Its Petition.**

10    Trago filed its Voluntary Petition on September 28, 2009. In the 180 days before filing its

11    bankruptcy petition, Trago has maintained an office at 2215-B Renaissance Drive, Suite 16, Las

12    Vegas, Nevada, 89119. Before filing for bankruptcy protection and in an effort to avoid bankruptcy,

13    Trago streamlined all of its expenses. Trago was forced to operate with the bare minimum of

14    resources. While Trago was forced to let go of many of its employees, Trago was able to operate

15    with independent contractors and consultants. Furthermore, while Trago was forced to minimize

16    its administrative expenses, Trago maintained an office in Las Vegas Nevada, while its registered

17    agent was located in Carson City. Trago also filed its Application for Automatic Extension of Time

18    to File Certain Business Income Tax, Information, and Other Returns with the Internal Revenue

19    Service identifying Las Vegas as its address. See Exhibit 10.

20    Trago maintains a valid business license to operate in the State of Nevada. See Exhibit 9.

21    Also, Trago's principal business address in Las Vegas was not the address for Trago's resident agent

22    service, instead, Trago's resident agent is located in Carson City, Nevada. See Exhibit 9. All major

23    business decisions in the 180 days before filing for bankruptcy protection were made in Nevada.

24    Trago consulted with the law office of John Peter Lee, Ltd. in the weeks before filing bankruptcy and

25    the decision to file for bankruptcy was made in Nevada. Moreover, the Declaration of John J.

26    Laxague supporting the Motion lacks any relevance as he admits that he visited Trago's address on

27    October 22, 2009, nearly a month after Trago filed its Petition. The relevant period for determining

28    venue is 180 <u>before</u> the filing of the Petition, not after.



JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

1  assets are located. See In re Sundance Corp., 84 B.R. 699. In the present case, while Trago

2  maintains assets in California and New Jersey, its principal place of business is in Nevada.

3  Therefore, pursuant to section 1408, venue is proper in Nevada and the Court should deny the

4  Motion to Dismiss.

5      The Court should deny the Motion to Dismiss because venue is proper as Trago's principal

6  place of business is Nevada. Trago's conducts business throughout the United States and transacts

7  business in Mexico. And while Trago maintains assets outside Nevada, "[c]ongress recognized that

8  the principal place of a debtor's business may be distinct from the location of the debtor's principal

9  assets." See In re LaGuardia, 316 B.R. 832, 836 (2004).

10      The determination of a debtor's principal place of business requires a fact intensive inquiry.

11  See In re LaGuardia, 316 B.R. at 838. While there are two schools of though with respect to the

12  question, i.e., the "nerve center test" and the "operational test." See In re LaGuardia, 316 B.R. at

13  838. The majority view is that the "nerve center test" is the most appropriate way to determine the

14  debtor's principal place of business and thus answer the question whether venue is proper. See In

15  re LaGuardia, 316 B.R. at 838.

16      With the "nerve center test", the Court "focuses on [sic] where the debtor's most important

17  or consequential business decisions are made." See In re LaGuardia, 316 B.R. at 838; see also In re

18  Peachtree Lane Assocs., 198 B.R. 272 (1996). In the present case, Trago's most important or

19  consequential decisions within the last 180 days were made in Nevada. Trago maintains a valid

20  business license to operate in the State of Nevada. Also, Trago's books and records are maintained

21  by Richard Condon in Henderson. Trago consulted with the law office of John Peter Lee, Ltd. in

22  the weeks before filing bankruptcy and the decision to file for bankruptcy was made in Nevada.

23      Trago has maintained an office in Las Vegas, Nevada. Before filing for bankruptcy

24  protection and in an effort to avoid bankruptcy, Trago streamlined all of its expenses. Trago was

25  forced to operate with the bare minimum of resources. While Trago was forced to let go of much

26  of its employees, Trago was able to operate with independent contractors and consultants.

27  Furthermore, while Trago was forced to minimize its administrative expenses, Trago maintained an

28  office in Las Vegas Nevada.

JOHN PETER LEE, LTD.
ATTORNEYS AT LAW
830 LAS VEGAS BLVD. SOUTH
LAS VEGAS, NEVADA 89101
Telephone (702) 382-4044
Telecopier (702) 383-9950

1  constitute bad faith.

2  **CONCLUSION**

3      Based upon the foregoing, the Court should deny Motion to Dismiss Bankruptcy because

4  venue is proper in Nevada and Trago's Petition for Chapter 11 bankruptcy was filed in good faith.

5      Dated this 30 day of November, 2009.

6                          JOHN PETER LEE, LTD.

7

8

9

10                          JOHN PETER LEE, ESQ.
                            Nevada Bar No. 001768
11                          YVETTE R. FREEDMAN, ESQ.
                            Nevada Bar No. 009898
12                          830 Las Vegas Boulevard South
                            Las Vegas, Nevada 89101
13                          Phone (702) 382-4044/Fax: (702) 383-9950
                            E-mail:info@johnpeterlee.com
14                          Attorney for Debtor

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                            - 10 -

# EXHIBIT 2

# California Secretary of State Debra Bowen

*common good    privacy   All people Liberty Speak without discrimination*
*Conscience*

**Business Entities (BE)**

Online Services
- Business Search
- Disclosure Search
- E-File Statements
- Mail Processing Times

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Annual/Biennial Statements**

**Filing Tips**

**Information Requests**
(certificates, copies &
status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
- Business Resources
- Tax Information
- Starting A Business
- International Business
  Relations Program

**Customer Alert**
(misleading business
solicitations)

## Business Entity Detail

Data is updated weekly and is current as of Friday, January 22, 2010. It is not a complete or c
entity.

| | |
|---|---|
| Entity Name: | SSC MARKETING, INC. |
| Entity Number: | C0876655 |
| Date Filed: | 10/31/1978 |
| Status: | SUSPENDED |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 923 FIRST STREET |
| Entity City, State, Zip: | MANHATTAN BEACH CA 90266 |
| Agent for Service of Process: | STEVEN S CADY |
| Agent Address: | 923 FIRST STREET |
| Agent City, State, Zip: | MANHATTAN BEACH CA 90266 |

\* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automat
  to California Corporations Code **section 2114** for information relating to service upon cor
  surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to r
  search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and S**

**Modify Search   New Search   Printer Friendly   Back to Search Results**

**Privacy Statement | Free Document Readers**

Copyright © 2010   California Secretary of State

# EXHIBIT 3